Matthias, J.
 

 The single question of law presented is whether a verdict should have been directed in favor of the defendant at the close of all the evidence, pursuant to the motion then made. The defendant admitted that Emma Leube had made the application for insurance and that defendant had received the first payment of premium and given a receipt therefor which is set out in the foregoing statement.
 

 Under the law of this state such premium receipts create contracts of temporary or interim insurance. This was specifically held in the case of
 
 Duncan
 
 v.
 
 John Hancock Mutual Life Ins. Co.,
 
 137 Ohio St., 441, 31 N. E. (2d), 88. There can be no issue therefore as to the existence of a contract of insurance; the question is what is the
 
 interim
 
 covered thereby. The general rule applicable is stated in 44 Corpus Juris Secundum, 960, Section 230, as follows:
 

 “Where a preliminary or temporary contract provides that it shall be operative from its date or other specified date subject to acceptance of the application or approval of the risk, it is effective from the specified ■date according to its terms where the company accepts the application or approves, the risk;
 
 but where the
 
 
 *454
 

 company exercises its right of disapproval in the manner specified the insurance ceases instantly, and no' liability arises thereunder.”
 
 (Italics supplied.)
 

 It is contended by tbe plaintiff that the decision of the court in the
 
 Duncan case, supra,
 
 requires the affirmance of the judgment in the instant case. In that case, however, the court was not called upon to consider or determine the duration of the period covered by such interim or'temporary contract. The death occurred prior to any. action of the company either accepting or rejecting the application, the delay being-occasioned by reason of a difference in the statement of the applicant’s occupation in the application and that appearing in the medical examiner’s report. The contention made by the claimant in that case, as stated on page 446 of the opinion, was that “the interim or temporary insurance thus effected was to be for thb period between the making of the application and its. approval and acceptance or rejection by the insurer.”'
 

 It is to be observed that quite a different situation is-presented in this case from that disclosed in the
 
 Duncan case.
 
 The record in the instant case'discloses that the application for insurance had been rejected prior to the occurrence of the injuries which resulted in the death of the applicant. In the
 
 Duncan case
 
 there was not, and could not have been, any issue as to. whether the insurer; could be held for a loss against1 which it had specifically refused to insure or whether the company would be liable under an application for insurance which it had actually rejected. That issue, presented by the facts in this case, is now before the court for the first time and a determination of that issue is decisive of the instant case. It seems too clear to require argument, that the insurer may not be lawfully required to pay a loss against which it had specifically refused to insure or be held liable when it had definitely rejected the application for insurance
 
 *455
 
 and thereby refused to accept the risk. No decision has come to our attention holding the contrary.
 

 The unusual situation presented in this case was before the New York Court of Appeals in the case of
 
 Corning
 
 v.
 
 Prudential Ins. Co. of America,
 
 273 N. Y., 668, 8 N. E. (2d), 338, which was a case involving the same company and with facts almost identical with the facts in this case. In no other case do we find the precise question presented and decided. The following pertinent facts are quoted from the
 
 Corning
 
 case:
 

 ‘ ‘ The action was brought to recover upon an alleged contract of life insurance on the life of the husband of plaintiff who was named as beneficiary therein. The husband applied for the policy on February 7, 1935, and paid the first' quarterly premium thereon. He received a receipt reading that, in view of such payment, ‘the insurance shall take effect from the date of the application * * # provided said application is approved and accepted at the home office of the company in Newark, New Jersey, under the plan, for the premium paid and amount of insurance applied for.’ The application for the policy, which contained a similar provision, reached the home office on February 11, 1935. On February 15, 1935, the home office forwarded a policy of a different type, and which called for a larger premium, to its district office at Rockville Centre, New York; with instructions to advise the applicant that defendant had declined to grant the policy applied for and had offered, instead, the substituted policy. The •agent in charge of the application received the instructions and the proposed policy on February 16, 1935, went that same day to the residence of the applicant, but could find no one at home and learned that the applicant was out of town. The applicant had left New York on February 8,1935. On February 15,1935, he was injured in an automobile collision and died on February 18, 1935.”
 

 
 *456
 
 The New York Court of Appeals, basing its conclusion upon the facts above stated, unanimously affirmed the judgment of the Appellate Division of the Supreme Court. In that case, as in this,.there was a disapproval and rejection of the application for insurance. There, as here, the plajntiff contended that the insurance took effect on the date of the application and payment of the premium, and that there was a liability notwithstanding rejection of the application by the insurer.
 

 By reason of the rejection of the application in the instant case, there was no contract of insurance in effect at the time of the death of the applicant. The motion of the defendant should have been sustained and a verdict for the defendant directed at the close of the evidence.
 

 Having hereinbefore shown the distinction between this case and the
 
 Duncan case, supra,
 
 we again direct attention to the rule that the syllabus of a decision of this court must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the court.
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Baillie,
 
 112 Ohio St., 567, 148 N. E., 233;
 
 Williamson Heater Co.
 
 v.
 
 Radich,
 
 128 Ohio St., 124, 190 N. E., 403.
 

 Upon casual view, some authorities cited appear to support the plaintiff’s contention, among them being the following: 22 Ohio Jurisprudence, 1943 Qumulative Supplement, 2632, Section 163a; 29 American Jurisprudence, 159, Section 143; 81 A. L. R., 336; 44 Corpus Juris Secundum, 962, Section 230;
 
 Starr
 
 v.
 
 Mutual Life Ins. Co. of
 
 N. Y. 41 Wash., 228, 83 P., 116.
 

 It must be' borne in mind that pronouncements of writers of text books or annotations are of no more weight or value than the court’s decisions cited in support of them.
 

 The only life insurance cases, cited in support of the pronouncements in 22 Ohio Jurisprudence,
 
 supra,
 
 re
 
 *457
 
 lied upon by counsel for plaintiff are the
 
 Duncan case,
 
 hereinbefore considered, and
 
 Prudential Ins. Co.
 
 v.
 
 Howard,
 
 18 Ohio Law Abs., 688. The
 
 Duncan case
 
 was certified to this court on the ground of conflict of the judgment of the Court of Appeals for Cuyahoga ■county with the judgment of the Court of Appeals for Butler county in the
 
 Howard case.
 

 This court, in reversing the judgment in the
 
 Duncan case,
 
 in effect affirmed the judgment in the
 
 Howard case.
 
 The question presented in the instant case was not presented or considered in the
 
 Howard case.
 
 That fact is clearly shown by the following statement in the ■opinion in the
 
 Howard case:
 
 “It is not necessary to extend this opinion by pointing out the difference in phraseology of the application or receipt in those cases in which it was held no liability attached,
 
 or to point -out that in some of them there had been an actual rejection of the application.”
 
 (Emphasis ours.)
 

 The holding of the court in the
 
 Howard case,
 
 which ■seems to cover the real question there presented, is that where an insurance company “is keeping it [the application] under advisement while investigating inconsistent statements as to his marital status and address, will be held liable * * * when the insured is accidentally killed while the interim or temporary insurance'is in effect prior to issuance of the policy
 
 or rejection by the home office.”
 
 (Emphasis ours.)
 

 The text cited in American Jurisprudence refers •only to fire insurance cases. The-only case cited, as supporting the pronouncement relied on from 81 A. L. R., is
 
 Mohrstadt
 
 v.
 
 Mutual Life Ins. Co.,
 
 52 C. C. A., 675, 115 F., 81. The inapplicability of that case is manifest by the concluding words of the opinion:
 

 “The case at bar rests entirely upon the construction ■of what is termed the ‘Binding Receipt,’ and is distinguishable from the cases last referred to for the reason that by the terms of the receipt — from which
 
 *458
 
 any contract of insurance existing between the parties must arise — the defendant did not agree to assume any risk on the life of the deceased until it bad accepted bis application, wbieb application it never did accept.”
 

 The text in Corpus Juris Secundum referred to cit^s only a fire insurance case.
 

 The case of
 
 Starr
 
 v.
 
 Mutual Life Ins. Co., supra,
 
 involved a situation where an application for insurance was
 
 accepted
 
 by the company, and a policy issued, though an accident and death resulting therefrom intervened and the policy was not delivered.
 

 For the reasons hereinabove stated the judgment of the Court of Appeals is reversed and final judgment is rendered for the defendant.
 

 Judgment reversed.
 

 Turner, Hart and Bell, JJ., concur.
 

 Weygandt, C. J., dissents.
 

 Zimmerman and Sohngen, JJ., not participating.