## BELLAK
v.
## UNITED HOME LIFE INS. CO.
### No. 11927.

United States Court of Appeals,
Sixth Circuit.
March 19, 1954.

A. Albert Sugar, Detroit, Mich., Rottman, Siegel & Sugar, Detroit, Mich., on the brief, for appellant.

David G. Barnett, Detroit, Mich., Lawrence E. Brown, David G. Barnett, Detroit, Mich., on the brief (Fischer, Brown, Sprague, Franklin & Ford, Detroit, Mich., of counsel), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Appellant, Katherine F. Bellak, brought this action to recover from the

United Home Life Insurance Company, appellee, under an alleged life insurance contract, in which she was named the beneficiary, covering the life of her son, Herbert C. Bellak. The District Judge sustained appellee's motion for summary judgment and dismissed the action.

The pleadings, pre-trial conference, and answers of the appellee to interrogatories propounded by the appellant show the following facts: On or about March 30, 1951, Herbert C. Bellak made application to the appellee for a life insurance contract in the amount of $10,000 wherein the appellant was designated as the beneficiary. About April 2, 1951, Bellak paid to the appellee through S. H. Howard, its authorized soliciting agent, $121.70, representing the first quarterly premium payment thereon. The application provided—"I agree * * * (e) that the insurance hereby applied for shall not take effect unless and until the full first premium or the Short Term Premium, shall have been paid and the policy delivered to the applicant during the lifetime and sound health of the applicant, except as provided in the Binding Receipt bearing the same number as this application and given to the applicant by an authorized agent of the Company for the said premium." It also provided that if the risk was not assumed by the company, the sum paid would be returned in accordance with the provisions of the binding receipt. On or about May 1, 1951, Bellak died as a result of an appendectomy operation, of which fact appellee was informed by an attorney in Detroit on or about May 7, 1951. The application was rejected on May 9, 1951, and during the latter part of May it sent to the administrator of the estate of the decedent its check for $121.70, as a return of the premium, which check was not accepted or cashed. Appellee refused to deliver a policy to the appellant, and also refused appellant's demand for payment of the $10,000 insurance applied for.

Appellant claims that when Bellak paid the first quarterly premium of $121.70, agent Howard executed and delivered to Bellak the Binding Receipt referred to in the application. However, appellant was not able to produce the executed receipt, and appellee's evidence was that the Binding Receipt bearing the same number as the application was still in its file and had never been executed. There is no dispute that such Binding Receipt contained this provision: "(1) That, subject to the terms and conditions of the policy contract, the insurance applied for shall be effective from the date of the application, or the date of the medical report if required by the Company, whichever is later, provided the Company shall be satisfied that on said date the applicant was insurable under the rules, limits and standards of the Company for the amount and plan of insurance applied for and at the premium stated in this Binding Receipt and shall approve the application at its Home Office."

It is appellant's contention that although no insurance policy was actually issued, the execution of the application, the payment of the required quarterly premium, and the execution and delivery by the appellee of the Binding Receipt constituted a valid contract of insurance on the life of Bellak, effective as of the date of the medical report. Appellee contends that conceding, for the purposes of the motion only, that the Binding Receipt was executed and delivered by its agent, there was no contract of insurance in existence on May 1, 1951, the date of Bellak's death, because the appellee was not satisfied that Bellak was insurable under the rules, limits, and standards of the Company for the insurance applied for, and that the application had not been approved by it at its Home Office, both of which conditions were required to be met by the terms of the Binding Receipt.

Appellee's motion for summary judgment was based on the foregoing facts. In opposition to the motion, appellant filed the affidavit of the soliciting agent Howard, in which he set out his solicitation of the application, the payment of

the quarterly premium to him, and the execution and delivery by him to Bellak of the Binding Receipt which Bellak folded and placed in his billfold. The affidavit also stated that in answer to Bellak's inquiry as to when the insurance became effective, he told him to take his medical examination, and, if the doctor did not reject him at the time of the examination, he was insured from that time on as if the policy had been issued; that Bellak took the medical examination about three or four days after the application was made; that the affiant was never notified by the examining doctor or by anyone else that the applicant had been rejected for any reason whatsoever until after the death of Bellak, when the appellee returned the premium of $121.70 to be given to the administrator; that the procedure which he followed in soliciting the application, obtaining the premium, giving the applicant the Binding Receipt, his statement to the applicant that he was insured from the time of the, medical examination, if not then rejected by the doctor, was the authorized procedure for all agents of the appellee, and also the standard procedure in all life insurance companies with which he had been associated for approximately 15 years.

The District Judge held that the undisputed facts showed that at the time of Bellak's death the appellee had not delivered a policy to him, had not accepted the risk by approval of the application at its Home Office, and had not entered into any contract of insurance, and sustained the motion for summary judgment. He also made a finding that the Binding Receipt was never executed by the agent nor delivered to Bellak, which, in view of the conflicting evidence on the issue, he was not authorized to make in ruling on the motion for summary judgment. However, he disregarded this finding in making his ruling, assuming for the purposes of the motion that the Binding Receipt had been executed and delivered to the intended insured. The finding, and ap-

pellant's objection thereto, are accordingly disregarded.

In making his ruling, the District Judge relied upon Smiley v. Prudential Insurance Co., 321 Mich. 60, 32 N.W.2d 48, which held that in a case of an application and payment of the first premium, with death occurring before the issuance of the policy, the provision in the application requiring the application to be approved at the Home Office before the insurance was effective, was controlling, and since the application had not been approved by the Company at its Home Office in accordance with the plan, premium and amount of insurance applied for, at the time of the applicant's death, there was no valid contract of insurance. Appellant relies upon Gaunt v. John Hancock Mutual Life Ins. Co., 2 Cir., 160 F.2d 599, certiorari denied 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858, in which the Court allowed a recovery against the insurance company based on the application and payment of the first premium, even though no policy had been issued and the application had not been approved by the Company at its Home Office as required by the terms of the application. The Court relied largely upon the view that the binder clause in the application was ambiguous; that considering the application as a whole, the ordinary person applying for insurance would not believe that his coverage was delayed until some later date when it received final approval at the Home Office; and that such ambiguity be construed in favor of the insured. The ruling in the Gaunt case has apparently received some approval as indicated by reviews of it in 60 Harvard Law Review 1164 and 15 University of Chicago Law Review 379. See also Wolfskill v. American Union Life Ins. Co., 237 Mo.App. 1142, 172 S.W.2d 471; Duncan v. John Hancock Mutual Life Ins. Co., 137 Ohio St. 441, 31 N.E. 2d 88; Leube v. Prudential Insurance Co., 147 Ohio St. 450, 72 N.E.2d 76, 2 A.L.R.2d 936. In Stonsz v. Equitable Life Assurance Society, 324 Pa. 97, 187 A. 403, 107 A.L.R. 178, the Court re-

views a number of cases and discusses the reasons why such interim insurance is held effective. However, this case is controlled by the law of Michigan and appellant has not referred us to any change in the Michigan law since the decision in Smiley v. Prudential Insurance Co., supra. In Smiley v. Prudential Ins. Company, supra, the Michigan Court failed to see any ambiguity in the wording of the application, which was very similar to the wording of the Binding Receipt herein involved, and discussed and declined to follow a number of the cases from other jurisdictions holding interim insurance valid, including Wolfskill v. American Union Life Ins. Co., supra, Duncan v. John Hancock Mutual Life Ins. Co., supra, and Leube v. Prudential Ins. Co., supra. In support of its ruling it cited Mutual Life Ins. Co. v. Young's Admr., 23 Wall. 85, 23 L.Ed. 152; Olson v. American Central States Life Ins. Co., 172 Minn. 511, 216 N.W. 225; Cooksey v. Mutual Life Ins. Co., 73 Ark. 117, 83 S.W. 317; Brancato v. National Reserve Life Ins. Co., 8 Cir., 35 F.2d 612. The conflict in the authorities is pointed out in Annotations in 81 A.L.R. 333 and 107 A.L.R. 194. We are of the opinion that the District Judge correctly followed the Michigan ruling on this phase of the case.

We are of the opinion, however, that there is another phase of the case which was not considered by the District Judge, involving a factual question which was not fully or sufficiently developed to justify disposing of this case on a motion for summary judgment. A few days after the payment of the premium on April 2, 1951, Bellak took the required medical examination. The record shows that the Company concluded that the application would not be accepted on May 9, 1951, which was eight days after the death of Bellak, and two days after appellee first learned of Bellak's death. The record does not show what processing the application had in the meantime, or any adverse report from the medical examination made during the first week in April. The failure over a period of approximately a month to notify the applicant that the application was rejected, with no adequate explanation therefor, coupled with no adverse report from the medical examination, and the uncontradicted statement of the soliciting agent that it was the standard procedure for the appellee to have the applicant advised that the insurance was effective if not rejected by the doctor at the time of the medical examination, gives rise to the reasonable inference that the application was either approved, or should have been approved in the usual course of events, before May 1, 1951, thus contradicting appellee's contention to the contrary. We recognize that a reasonable delay in acting upon an application does not constitute an approval or an acceptance of it. But an unreasonable delay under certain circumstances may constitute an approval. Robinson v. United States Benevolent Society, 132 Mich. 695, 699, 94 N.W. 211; Northwestern Mutual Life Ins. Co. v. Neafus, 145 Ky. 563, 571–573, 140 S.W. 1026, 36 L.R.A.,N.S., 1211; Witten v. Beacon Life Assoc., 225 Mo.App. 110, 33 S.W.2d 989; Preferred Accident Ins. Co. v. Stone, 61 Kan. 48, 58 P. 986. See also Hoyle v. Grange Life Assurance Association, 214 Mich. 603, 606, 183 N.W. 50. The result of the medical examination, what happened between the date of the medical examination and the applicant's death, whether the delay in acting upon the application was reasonable under the circumstances, the authority of the soliciting agent to make representations to the applicant in conflict with the provisions of the application, and the reasons, if any, for the failure to approve the application promptly, are facts which are important in deciding whether the application was approved, either as a matter of fact or as a matter of law, before May 1st, 1951. Appellee's answer to Interrogatory No. 4 that reports from investigatory and medical sources led it "to the conclusion on May 9, 1951 that the application as submitted could not be accepted at standard

rating" is not a satisfactory answer to those questions, and not one which appellant should be required to accept without an opportunity to hear and cross-examine appellee's witnesses and offer proof in her own behalf. Where there is a reasonable indication that a material fact is in dispute a case should not be disposed of by summary judgment proceedings. Begnaud v. White, 6 Cir., 170 F.2d 323, 327; Estepp v. Norfolk & W. Ry. Co., 6 Cir., 192 F.2d 889, 893; Lloyd v. United Liquors Corp., 6 Cir., 203 F.2d 789, 793–794.

As pointed out in Estepp v. Norfolk & W. Ry. Co., supra, it may be that in the trial of this case a directed verdict for the defendant will be proper, or that the case should be submitted to the jury. In any event, we are of the opinion that a trial by jury, as requested by the appellant, is necessary to fully develop the material facts with reference to the processing of the application, and that the case should not have been disposed of by summary judgment proceedings.

The judgment is reversed and the case remanded to the District Court for further proceedings consistent with the views expressed herein.