**ENGLANDER MOTORS, INC., Plaintiff,**
v.
**FORD MOTOR COMPANY, Defendant.**
Civ. No. 30869.

United States District Court
N. D. Ohio, E. D.
July 15, 1960.

Myron Krotinger, of Mendelsohn, Krotinger & Lane (now Mendelsohn, Krotinger, Lane & Traeger), and M. Alfred Roemisch and Herbert Rosenthal, Cleveland, Ohio, on the brief, for plaintiff.

C. W. Sellers and Andrew C. Hartzell, Jr., of Thompson, Hine & Flory, Cleveland, Ohio, for defendant, Ford Motor Co.

CONNELL, District Judge.

This action is brought to recover treble damages under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, for alleged violations of Sections 2 and 3 of the Robinson-Patman Act, 15 U.S.C.A. §§ 13 and

13a. Defendant moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and supports his motion by alleging (1) that the entire action is barred by the governing statute of limitations, and (2) that the complaint fails to state a claim insofar as it charges a violation of Section 3 of the Robinson-Patman Act.

Since counsel for both parties seem to have predicated at least a part of their contentions concerning the issue involving the statute of limitations on the Court's resolving the preliminary issue in their favor, we deem it appropriate to decide this question first. Since only questions of law are involved for purposes of the present motion, we need not repeat any of the contentions as to the facts, for in any event our decision must be based upon the set of facts most favorable to the plaintiff, the party opposing the motion.

The preliminary issue involves simply the question of whether the price discrimination clause of Section 3 of the Robinson-Patman Act can be the basis of a treble damage action brought under Section 4 of the Clayton Act. Both parties agree that the question is controlled by the Supreme Court's decisions in Nashville Milk Co. v. Carnation Co., 1958, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed. 2d 340, affirming 7 Cir., 1956, 238 F.2d 86, and Safeway Stores, Inc. v. Vance, 1958, 355 U.S. 389, 78 S.Ct. 358, 2 L.Ed. 2d 350, vacating and remanding 10 Cir., 1956, 239 F.2d 144, but both argue vehemently that the decisions directly support their own contentions.

Section 4 of the Clayton Act permits private actions for treble damages only if the injury resulted from practices forbidden by the "anti-trust laws" as defined in Section 1 of the Clayton Act.[1]

Thus, if Section 3 of the Act is not an anti-trust law as defined in the Clayton Act, a cause of action cannot be based on that section.

Plaintiff, in its brief opposing defendant's motion, agrees that the Court in the Nashville case expressly ruled that a private cause of action for treble damages does not lie for practices forbidden by the "unreasonably low prices" clause of Section 3 of the Robinson-Patman Act. However, plaintiff maintains that the language of the Court in both Nashville and Vance shows expressly that private actions based upon the price discrimination clauses of both Sections 2 *and* 3 of the Act will lie.[2] The language relied upon by plaintiff to reach such a conclusion is as follows: In Nashville, Mr. Justice Harlan stated:

"What appears from the face of the Robinson-Patman Act finds full support in its legislative history. The fair conclusions to be drawn from that history are (a) that § 3 of the Robinson-Patman Act was not intended to become part of the Clayton Act, and (b) that the section was intended to carry only criminal sanctions, *except that price discriminations, to the extent that they were common to both that section and § 2 of the Clayton Act, were also understood to carry, under the independent force of the Clayton Act, the private remedies provided in §§ 4 and 16 of the Clayton Act."* 355 U.S. at page 380, 78 S.Ct. at page 356. (Emphasis in brief.)

By taking the above paragraph out of context, as plaintiff did, and reading it without explanation, it does appear to be some authority for the proposition urged by plaintiff. But in the Supreme Court's opinion in Nashville, only the clause "un-

---

1. 38 Stat. 730. These laws include (1) The Sherman Act, (2) parts of the Wilson Tariff Act, (3) The Act amending the Wilson Tariff Act, and (4) The Clayton Act. See 355 U.S. at page 375, 78 S.Ct. at page 353.

2. Section 2 of the Robinson-Patman Act, which concerns itself solely with price

discriminations, applies the amending provisions of Section 1 of the Robinson-Patman Act to litigation commenced under the former provisions of Section 2 of the Clayton Act, 15 U.S.C.A. § 21a. See 355 U.S. at page 377, 78 S.Ct. at page 354.

der the independent force of the Clayton Act" is in italics, indicating of course that the amendment of Section 2 of the Clayton Act by Section 1 of the Robinson-Patman Act is the sole basis upon which a private action for price discrimination can be supported. This is further demonstrated by the very next sentence in the opinion.

> "In other words, although price discriminations are both criminally punishable (under § 3 of the Robinson-Patman Act) and subject to civil redress (under § 2 of the Clayton Act), selling 'at unreasonably low prices' is subject only to the criminal penalties provided in § 3 of the Robinson-Patman Act."

It thus appears that the question of civil redress for price discriminations under Section 3 of the Robinson-Patman Act is specifically considered and rejected. Additional language in the Court's opinion strengthens our reading of the case. The last paragraph of the opinion reads:

> "For the foregoing reasons, we hold that a private cause of action does not lie for practices forbidden only by § 3 of the Robinson-Patman Act. To the extent that such practices also constitute a violation of § 2 of the Clayton Act, as amended, they are actionable by one injured thereby *solely under that Act*. Since no such infringement of § 2 is alleged here, the complaint in this case was properly dismissed." (Emphasis added.)

Certainly, if the Court wanted to distinguish the price discrimination clause of Section 3 from the unreasonably low prices clause of the same section, it would have been a simple and logical thing to do insofar as it had already expressed by way of dictum its opinion that

Section 2 violations are actionable because of the independent force of the Clayton Act.

It is certainly true that the specific question before the Court in Nashville and Vance was whether the unreasonably low prices clause of Section 3 could be the basis of the private action afforded by Section 4 of the Clayton Act. But it seems equally true that the majority's opinion is couched in language unmistakably descriptive of Section 3 in its entirety. Indeed, our reading of the opinion, together with the dissent [3] and the lower court opinions, conclusively persuades us that none of the courts involved intended their various opinions and comments to apply only to a part of Section 3.

We find complete support of our decision by the Sixth Circuit in Ludwig v. American Greetings Corp., 1959, 264 F. 2d 286, where Judge Miller indicated that the appellant, in the light of the decision in Nashville, had properly abandoned on appeal his reliance on the price discrimination clause of Section 3, although he had properly brought an action for treble damages under Section 2 of the Clayton Act, as amended by Section 1 of the Robinson-Patman Act.

In the light of the above authority, it becomes our duty to dismiss the plaintiff's claim based on Section 3 of the Robinson-Patman Act for failure to state a cause of action.

Having disposed of this question, we now turn to the principal question raised on this motion. Stated simply, it is as follows: Whether an action for treble damages brought under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, is an action for a penalty within the meaning of Section 2305.11, Ohio Revised Code, so as to be barred if not brought within one

---

3. The dissent of Justice Douglas begins: "The question in these cases is whether a person injured by a violation of § 3 of the Robinson-Patman Act * * * may sue the wrongdoer for treble damages * * * under § 4 * * * of the Clayton Act. * * *". This dissent spent six pages trying to persuade the majority that it erred in reading the Act's legislative history. But not once did the dissent attempt to limit the scope of the Court's opinion to the precise issue before it (unreasonably low prices). Rather, the entire dissent recognized that if the majority is to prevail, it will apply to *all* actions brought under Section 3.

year after the cause accrued.[4] The problem is not a new one, and has confronted numerous federal courts ever since Congress enacted the treble damage section in 1914. But though the problem has been raised often, and remains a real problem in the instant action, it will soon be obviated, for on July 7, 1955, Congress enacted a Federal Statute of Limitations, 15 U.S.C.A. § 15b, to become effective on January 7, 1956, which specifies a four-year period within which an action of the instant type may be brought.

After a study of the many federal court decisions that have had to resolve this same problem in relation to another state's statute of limitations, we deem our task to be twofold. We first must determine the essential nature or character of a treble damage action arising under Section 4 of the Clayton Act. Once accomplished, we must then determine what Ohio statute of limitations Ohio courts would hold applicable to a claim of this nature. See for instance Bertha Building Corp. v. National Theatre Corp., 2 Cir., 1959, 269 F.2d 785, and Leonia Amusement Corp. v. Loew's Inc., D.C. S.D.N.Y.1953, 117 F.Supp. 747.

▮ It appears that federal authorites in general treat a Section 4 action as one both remedial and penal or punitive in nature. Judge Learned Hand expresses it in this manner:

"The remedy * * * is not solely civil; two thirds of the recovery is not remedial and inevitably presupposes a punitive purpose." Lyons v. Westinghouse Elec. Corp., 2 Cir., 222 F.2d 184, at page 189, certiorari denied 1955, 350 U.S. 825; 76 S.Ct. 52, 100 L.Ed. 737.

And the Seventh Circuit said:

"The verdict (in a treble damage action) should represent actual damages sustained, and two-thirds of the judgment is a penalty which Congress has seen fit to impose." Bigelow v. RKO Pictures, Inc., 7 Cir., 1945, 150 F.2d 877, at page 883.

The total recovery which any aggrieved litigant receives is arbitrarily computed, using actual loss only as a base. Undoubtedly, one of the prime purposes in allowing recovery three times the amount of actual damage was to encourage private enforcement of the anti-trust laws, and for this purpose Congress could have decided upon any percentage of the verdict as a penalty superimposed.[5] That Congress settled on three times the actual damage is of no moment here.

▮ The essential nature then of a treble damage action under the Clayton Act, as we construe the numerous decisions on the subject, is one which grants an aggrieved party actual damages as a compensatory or remedial recovery, and then imposes a penalty by tripling the actual damage as a deterrent against violations of the anti-trust laws, when otherwise such violations might well go undetected and unprosecuted by the government itself.

With this essential nature in mind, we must now fit such an action within the boundaries of the appropriate Ohio Statute of Limitations. Both parties concede that if Section 2305.11 of the Ohio Revised Code [6] does not apply, then the action is governed by Section 2305.07, as an action upon a liability created by statute other than a forfeiture or penalty. Under this section, the statute specifies

---

4. Plaintiff's complaint, filed in 1954, avers that the alleged unlawful price discrimination ceased "in or about the middle of 1950". It thus is obvious that if the action should fall within the penalty provisions of the Ohio statute of limitations it will be barred.

5. See Sen.Rep. 619, 1955 U.S.Cong. and Adm.News 2329. See also United States

v. Standard Ultramarine & Color Co., D.C.E.D.N.Y.1955, 137 F.Supp. 167.

6. "An action for libel, slander, assault, battery, malicious prosecution, false imprisonment, or malpractice, or upon a statute for a penalty or forfeiture, shall be brought within one year after the cause thereof accrued * * *."

six years as the time within which the action must be brought, and if applicable in the instant case, then the complaint was timely filed.

Assuming we are correct in our analysis of this treble damage action, and recognizing that we must then, by a thorough study of pertinent Ohio law, determine the proper statute of limitations to be applied in this case, it seems reasonable to attempt to find an Ohio statute that closely parallels the federal statute in language and purpose. If there is an Ohio statute that provides both remedial and penal damages, decisions interpreting such a statute will be very relevant as we determine the feeling of Ohio courts on the question. If there is no such statute, then we must make our determination from a study of miscellaneous Ohio cases [7] that have treated certain actions as penal in nature to see if the instant action fits within the penalty pattern as established by these cases.

A review of the various Ohio statutes cited in defendant's brief and in Reid v. Doubleday, D.C.N.D.Ohio 1952, 109 F. Supp. 354, indicates that one Ohio statute, ORC § 1331.08, closely parallels the treble damage section of the Clayton Act in language and apparent purpose. In fact, this similarity of purpose and phraseology was expressly noted by the Ohio Supreme Court in List v. Burley Tobacco Developers Ass'n, 1926, 114 Ohio St. 361, 151 N.E. 471.[8] The law, commonly known as the "Valentine Act", is covered in Sections 1331.01 to 1331.15 of the Ohio Code, and generally prohibits many of the trade practices declared unlawful by the various federal antitrust laws.

Had the Supreme Court of Ohio, or indeed any of the lower courts, decided the question of whether this double damage section created an action for a penalty within the meaning of Section 2305.11, our task would have been simple. Un-

fortunately, we have not been able to discover, nor has either party cited to us, an Ohio case that passed directly on that question. There are, however, several cases that discuss in general terms the nature of an action for double damages, and under the prevailing circumstances we consider these cases to be of no little importance in resolving the issue that presently confronts us.

In Foster v. Ankenbauer, C. P. Hamilton Co. 1913, 140 Ohio N.P.,N.S., 637, 24 Ohio Dec. 70, the court was called upon to decide whether the activities of fire insurance companies fell within the prohibitions of the Valentine Act. The judge, in sustaining a demurrer to the petition, had this to say:

"Counsel for plaintiff asked me to take a broad view of this statute. I am perfectly willing to give as broad a construction to the statute as possible, but after all, this is both a criminal statute and a quasi-criminal, in that there is a penalty attached to the violation of a statute which makes it criminal, and criminal proceedings may be brought under it. Then there is a right of action under Gen.Code 6397, *which is in the nature of a penalty*. In other words it provides that if any one violates this statute and some one suffers injury, he is entitled notwithstanding what the state may do, to damages in double the amount for the injury which he may sustain. *That is a penalty*, and that has been construed by the court as a quasi-criminal, and therefore a strict construction must be given to the statute." 24 Ohio Dec. at [page] 73. (Emphasis added.)

This is perhaps the strongest recorded expression in Ohio as to the essential nature of an action for double damages. But other cases have held to the same effect. See for instance, Gildehaus Co. v.

---

7. See the numerous cases cited in the opinion of Reid v. Doubleday & Co., D.C. N.D.Ohio 1952, 109 F.Supp. 354.

8. A comparison of the language of the damage section of the Ohio anti-trust law with that of Section 4 of the Clayton Act shows a pronounced similarity between the two sections in their phraseology.

Busse, 19 Ohio N.P.,N.S., 263 (C. P. Hamilton Co. 1916); Corn Products Refining Co. v. Roser-Runkle Co., C. P. Hamilton Co. 1910, 10 Ohio N.P.,N.S., 596; and Boyle & Co. v. Pittsburg Plate Glass Co., Sup.Ct.Cinn. 1900, 70 Ohio N.P. 528. In the Gildehaus case, the court further recognized that an action for double damages under Section 1331.08, like an action under Section 4 of the Clayton Act (as we construe it), is one for damages both compensatory and exemplary in their nature. Additionally, our attention is called to the case of Merkel v. Maybaugh, C. P. Tuscarawas Co. 1945, 33 O.O. 284, where the court suggested that an action for double damages under the Valentine Act might fall within the one-year statute of limitation, and thus should be separately stated in the petition. Admittedly, such a comment was sheer dictum on the court's part, but it indicates to us that as late as 1945 there was no prior Ohio decision that compelled a different conclusion.

We are mindful that the words "penal" or "penalty" are not words of art. Thus, they may have different connotations in different factual situations.[9] This, of course, means we are not bound to accept the label "penalty" by which the Ohio decisions discussed above have characterized double damage actions as designating precisely the word "penalty" as used in Section 1331.08 of the Ohio Code, for other descriptive terminology might

have sufficed in these cases. However, in the absence of some better authority showing why the word "penalty" does not have the same meaning in one parallel situation as in another, it becomes highly persuasive in our mind that these courts have chosen that particular noun to describe the double damage action, especially since no authority has been cited to us that describes this type of action as anything other than a "penalty".[10]

A brief review of the legislative history surrounding the present Section 2305.11 persuades us even more that we are correct in our decision.[11] The Fair Labor Standards Act, 29 U.S.C.A. § 201, provides that an employee can sue to recover unpaid minimum wages or unpaid overtime compensation, and that in such an action he can additionally sue for a sum equal to the unpaid compensation, such additional sum being termed "liquidated damages". Although this federally-created right to an additional equal amount was thus apparently not intended to be a penalty, the Ohio legislature amended Section 2305.11 in 1942 by adding an express provision that such actions must be brought within three years after the cause accrued. In 1947 the period was reduced to two years. See Laws of Ohio, 120v. 646 (1943); 122v. 374 (1947). This amendment was held to apply specifically to actions brought under the Fair Labor Standards Act,

9. See Schiffman Bros. v. Texas Co., 7 Cir., 1952, 196 F.2d 695.

10. One additional case, worthy of mention becaue it was decided by the Ohio Supreme Court, adds some measure of credibility to our interpretation of Ohio case law on the subject of double damages. In Cooper v. Rowley, 1877, 29 Ohio St. 547, the Court treated an action to recover one's own gambling debt as within the penalty or forfeiture clause of the precursor statute to Section 2305.11. In so deciding, the Court held that such an action was "in the nature of debt qui tam" and therefore was included in the clause "an action upon a statute for a penalty or forfeiture". Although it is apparent that such an action is not one seeking both compensatory and exemplary damages, and thus not within

our characterization of the treble damage actions under the Clayton Act, the decision nevertheless brings claims *in the nature of an action qui tam* within the ambit of Section 2305.11, and as previously noted in the body of the opinion, Judge Learned Hand, in Lyons v. Westinghouse Elec. Corp., 2 Cir., 1955, 222 F.2d 184, 189, characterizes a federal treble damage action as "like a qui tam action".

11. Since an Ohio court, confronted with a question of first impression, undoubtedly would turn to legislative history as an aid to its statutory construction, so we, in deciding how an Ohio court would rule in such a case as the instant one, might certainly gain a similar measure of assistance in reaching our decision.

and was strictly applied even when the employee was misled by his employer into believing that his claim to overtime pay was groundless, thereby allowing the statutory period to elapse. Sontcvh v. Sharon Steel Corp., D.C.W.D.Pa. 1947, 73 F.Supp. 825.

In reading Section 2305.11 in the light of these above two amendments, it appears that the Ohio legislature recognized that some difficulty would occur if courts were left to their own devices in determining the proper statute of limitations to apply in actions brought under the Fair Labor Standards Act. Consequently, they included the entire action within Section 2305.11, but expressly provided a longer period, perhaps in deference to the Congressional terminology, in which to bring the action than the others included within the section, all of which carry some degree of punitive sanctions in their remedies. Thus, if the Ohio legislature would include within Section 2305.11 an action for additional damages that are expressly termed "liquidated damages" by the federal statute creating it, it seems logical that the same legislature would classify a parallel federal statute similarly where such a statute does not expressly treat the additional award as liquidated damages, but rather impliedly admits the penal nature of the treble damage action.

We now turn to the very necessary discussion of Reid v. Doubleday, D.C.N.D. Ohio 1952, 109 F.Supp. 354, 358, wherein Judge Kloeb held that an action brought under the treble damage provisions of the Clayton Act was not "upon a statute for a penalty or forfeiture" within the meaning of Section 2305.11. Since we are constrained to hold oppositely, it behooves us to examine closely the cases upon which Judge Kloeb based his decision, and to explain with specificity the bases for our conclusion.

Judge Kloeb cited numerous decisions by Ohio courts, including many of the cases cited in this decision which construe the double damage section of the Valentine Act, in which the word "penalty" was used to describe the type of

action being brought. However, Judge Kloeb rejected what we consider the necessary import of these decisions, and instead relied upon syllabus 1 of the case of Pittsburgh, Ft. W. & C. Ry. v. Methven, 1871, 21 Ohio St. 586, wherein it was stated:

"If a statute in the nature of a police regulation gives a remedy for private injuries resulting from the violations thereof, and also imposes fines and penalties at the suit of the public for such violations, the former will not be regarded in the nature of a penalty unless so declared."

It is clearly the law of Ohio that a syllabus of a decision of the Ohio Supreme Court must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the Supreme Court at that particular time. Leube v. Prudential Ins. Co., 1947, 147 Ohio St. 450, 72 N.E.2d 76, 2 A.L.R.2d 936; Williamson Heater Co. v. Radich, 1934, 128 Ohio St. 124, 190 N.E. 403. Accordingly, when a court seeks to apply the rules of one syllabus in a subsequent case, its primary inquiry should be whether or not the facts are substantially similar, and if not, whether the reason that impels the establishment of the rule is the same in the one instance as in the other. 14 Ohio Jur.2d 683.

It thus appears that we cannot accept the law contained in the syllabus blindly, but rather we must search the case to find the set of facts to which that particular rule of law applies, and if the facts are found to be substantially different from the instant facts, then to determine if the reason for the rule in the former case exists in the present one.

In Methven, the plaintiff claimed that the defendant railway had violated an 1859 Ohio statute by failing to construct fencing along its tracks, and that as a result his cow wandered onto the tracks and was killed. It was conceded that the plaintiff himself had violated another and later Ohio statute by allowing his cows to roam at large. Nevertheless, Methven claimed that the 1859 statute

created a penalty for its violation, and thus, in the absence of wilfull or wanton negligence on his part, his contributory negligence was no defense to the action. The court, in disagreeing with Methven, pointed out that the 1859 Statute contained two sections that permitted actions to be brought for its violations. Section 1 made the railroad liable for all damages to domestic animals that resulted from its violation, while Section 5 made the railroad liable to the State of Ohio for a sum not to exceed $50 a day for each and every day of continuing violations. The court indicated that since the statute contained a section that allowed the State to bring suit, Section 1, under which Methven brought his claim, could not be considered as allowing an action for a penalty. Indeed, the Court recognized that the same private cause of action would have existed even at common law. Additionally, it is clear from the language of Section 1 itself that the private action was for actual or compensatory damages only. It was under this unusual set of circumstances that syllabus 1 of the Methven case was prepared.

Since Methven obviously differs substantially on its facts [12] from the instant action, we must now determine whether the reason that impelled the establishment of the rule in that case exists here.

As indicated in our review of the facts in Methven, the private action was for compensatory damages only. It was this remedy that the court insisted be specifically declared a "penalty" before it could be so treated. Actually, such a proposition seems quite reasonable, for we don't believe that the average person, even if he be a judge, thinks of an award as penal in character when it simply puts the injured party in as good a position as he was in before the wrongful injury. If this is not true, why the universal distinction between compensatory and exemplary damages? It really appears as if all the Ohio Supreme Court did in the Methven case was to answer the plaintiff's claim in as simple and expeditious a manner as possible; i. e., by pointing out the obvious fact that a claim for simple damage is not a penalty without an express legislative declaration to that effect.

On the other hand, as pointed out earlier in the opinion, the treble damage actions under the Clayton Act have been characterized by numerous federal authorities as partly compensatory and partly penal in nature. This in itself is sufficient reason for Congress not to have actually declared such an action to be in the nature of a penalty. Too, treble damage actions did not exist at common law, and thus differ in basic character

12. Although the Methven facts differ considerably from the instant facts, we cannot agree with the fact distinction offered by defendant. Defendant urged as one of the principle reasons why Methven is not controlling the argument that once Section 3 of the Robinson-Patman Act is dropped from the pleadings, then the syllabus of the Methven case, even if divorced from its controlling facts, does not apply. This is so, the argument goes, because Section 2 of the Clayton Act, as amended, does not contain provisions for fines or penalties in actions brought by the government. In its reply brief, plaintiff urges that the syllabus in the Methven case does apply because Section 3 of the Robinson-Patman Act, which does contain criminal sanctions, should not be dismissed from the case. This appears to be the only substantial argument presented by plaintiff in support of its contention that Reid v. Doubleday correctly interprets and applies the Methven case.

As we read Methven, it makes no difference in our ultimate decision whether or not Section 3 of the Robinson-Patman Act is dismissed from the charges of the complaint. Both parties seem to imply that because Section 2 of the Act does not contain any provisions for "fines or penalties" at the suit of the public, a complaint based solely on Section 2 would not be sufficient to bring the action within the law of the syllabus. On the contrary, it seems clear from a complete reading of that case that the "statute" referred to in the syllabus refers to the entire Act of 1859, of which Section 1 (private suit) and Section 5 (public suit) are but a part of the whole. This is precisely the relationship of Sections 2 and 3 of the Robinson-Patman Act to the Act in its entirety.

from the type of action brought in Methven.

■ On the basis of the above discussion, we thus conclude that the reasons for the syllabus in the Methven case do not apply to the instant action. Consequently we are not bound to follow the broad legal maxim contained in its syllabus.[13]

Our analysis of Methven necessarily applies to City of Atlanta v. Chattanooga Foundry & Pipe Co., C.C., 101 F. 900, 6 Cir., 127 F. 23, 64 L.R.A. 721, 1900, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, where the lower court in Tennessee cited with approval the syllabus in Methven. The federal court that decided Chattanooga sixty years ago was concerned with what Tennessee statute of limitations controlled a treble damage action, and cited Methven, by way of dictum, as authority for its rule of statutory construction. No Ohio court has cited Methven for the same rule of statutory construction, and our reading of Ohio case law decided *after* the Chattanooga decision indicates that such a statutory construction does not apply to statutes that provide penal sanctions in more than one section of the statute. See Foster v. Ankenbauer, supra note 13.

Nor can the Chattanooga case be used for the proposition that the Supreme Court of the United States has characterized federal treble damage actions as nonpenal in nature. This has been fully explained by several recent federal court opinions that have held such an action to be a penalty within the meaning of the applicable state statute of limitations. See Hoskins Coal & Dock Corp. v. Truax, Traer Coal Co., 7 Cir., 1951, 191 F.2d 912; Banana Distributors, Inc. v. United Fruit Co., D.C.S.D.N.Y.1957, 158 F. Supp. 160, overruled Bertha Building Corp. v. National Theatres Corp., 2 Cir., 269 F.2d 785.

Both parties claim that the trend of federal decisions in this area shows a federal treble damage action to be characterized in a manner most favorable to their position. We find it difficult to recognize any such trend, for indeed the same circuit court might find it necessary to hold such an action to be a penalty under one state statute and not under another. Since our reading of the many federal decisions on the subject shows a near unanimity of characterization of a treble damage claim under the Clayton Act, we thus are not concerned with the actual decision emitting from other federal courts, for they, like ourselves, had their own peculiar problems in fitting such a characterization into a particular state statute of limitations.[14]

We find additional support for our conclusion in Judge Jones's memorandum opinion in Ludwig v. American Greetings Corp., Civil No. 30379 (N.D.Ohio 1959), where the court reached a conclusion expressly opposite to the one in Reid v. Doubleday, supra. The Ludwig decision is presently on appeal to the Sixth Circuit, and will be heard during the October term. Since it is likely that

13. In Foster v. Ankenbauer, 1913, 140 Ohio N.P.,N.S., 637, 24 Ohio Dec. 70, the common pleas court in Hamilton County impliedly recognized that the syllabus in Methven does not apply to private actions for more than compensatory damages by expressly declaring a private action for double damages under the Valentine Act to be "in the nature of a penalty" (the exact words used in the Methven syllabus), despite the fact that a criminal action also attaches to a Valentine Act violation.

14. The situation that evolved in New York amply illustrates the difficulty inherent in the resolution of this issue. When the District Court in Banana Dist., Inc. v. United Fruit, D.C.S.D.N.Y.1957,

158 F.Supp. 160, was decided, it rejected several earlier decisions by federal courts sitting in New York that were cited by Judge Kloeb in support of his proposition that the weight of authority showed a treble damage action to be nonpenal in character. Then in 1959, the Second Circuit, while recognizing that the Banana case might well have been decided correctly at the time, overruled it on the basis of a subsequent New York Court of Appeals decision that expressly treated a New York statute granting both compensatory and exemplary damages as nonpenal in nature. See Bertha Bldg. Corp. v. National Theatres Corp., 2 Cir., 269 F.2d 785.

the question as to the applicable statute of limitations will not be reached on appeal, we feel compelled to render our decision in this case now rather than to wait for a possible clarification of the law by the Sixth Circuit.

One final word needs to be said concerning this court's memorandum decision in Elyria-Lorain Broadcasting Co. v. The Lorain Journal Co., D.C.N.D.Ohio 1958, 185 F.Supp. 808. There we held, on the basis of Reid v. Doubleday, that a private claim under the anti-trust laws survived the death of a defendant. The question of whether the defendant's estate would be liable for treble damages was expressly reserved for decision by the trial judge. The issue was decided under common-law principles and in no way rested on the meaning or intent of any Ohio statute as declared in Ohio court decisions. Further, no attempt was made on behalf of the defendants there to challenge the decision in Doubleday, thus, for our purposes, it expressed the correct law on the subject within this district.

Defendant's motion for summary judgment is granted. An order may be prepared in accordance with the foregoing.