**Mrs. Frances E. QUINDLEN, Plaintiff-Appellee,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.**

**No. 72–3149.**

United States Court of Appeals,
Fifth Circuit.

July 11, 1973.

Rehearing Denied Aug. 13, 1973.

Neilson S. Jacobs, Shreveport, La., for defendant-appellant.

Troy E. Bain, Shreveport, La., for plaintiff-appellee.

Before BELL, INGRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Milton D. Quindlen applied for life insurance, paid a full year's premium, received temporary insurance pending acceptance or rejection of the application by the Company, and then died. The insurance company contended that it had rejected his application and thus had terminated the temporary insurance before the date of death. The District Court found that a five-day notice is required by the Louisiana statute to terminate this type of temporary life insurance, that no notice was given, and therefore held against the insurance company. We hold that the Louisiana statute does not apply to this kind of policy so that a five-day notice is not required, but we further hold that notice of some kind is necessary under the terms of the policy to complete in fact the rejection of the application by the Company. No notice at all having been given prior to death, the corporate act of

rejection was never completed and the judgment for the beneficiary of the policy is affirmed.

The insurance industry has developed what is known as temporary or interim life insurance to give insurance protection for the period of time between the application for insurance and the eventual issuance of the policy. Under this kind of insurance, if he pays the initial premium, an applicant can receive immediate, full insurance coverage from the date that he applies for a policy of life insurance.

Inasmuch as the contract provisions of life insurance applications and interim insurance pending acceptance or rejection of the application vary among insurers, it is necessary to pay close attention to exactly what the insurance company here agreed to do.

On August 24, 1967, the insured, a resident of Shreveport, Louisiana, applied to The Prudential Life Insurance Company of America for a $15,000 life insurance policy. On August 26, 1967, he completed a physical examination, paid the first annual premium, and was issued a "Prepayment Receipt," the effect of which was to establish temporary or interim insurance coverage on his life. On October 3, 1967, a Prudential employee in Houston stamped his application as rejected. On October 5, 1967, the insured died. On October 6, 1967, a form card entitled "Notice of Rejection of Application" was prepared in Prudential's Houston office and was mailed to the Shreveport office so that the insured could be advised of the rejection. The notice of rejection was communicated to the insured's wife on October 6, 1967. This suit followed.

The "Prepayment Receipt" required an affirmative act by Prudential to terminate the interim insurance: either rejecting the insurance application or declining to consider it on a prepaid basis during insured's lifetime.

The pertinent sections of the receipt provide:

NOTWITHSTANDING THE ABOVE PAYMENT NO INSUR-ANCE SHALL TAKE EFFECT OR CONTINUE IN EFFECT EXCEPT AS SPECIFIED IN THIS RECEIPT. IF AND ONLY IF PART I OF THE APPLICATION AND PART II OF THE APPLICATION . . . ARE ALL COMPLETED . . . and if and only if the Company has neither rejected the application nor declined to consider it on a prepaid basis, then:

1. Insurance (interim term insurance if requested in the application) in accordance with the terms and conditions of the policy applied for shall take effect on the effective date;

\* \* \* \* \* \*

Any insurance under 1 above may be terminated by the Company at any time during the proposed Insured's lifetime by rejecting the application or declining to consider it on a prepaid basis . . . . If any insurance is terminated . . . the Company's sole liability shall be the return of the above payment.

The Louisiana Insurance Code, La. Rev.Stat. 22:636, which governs all contracts of insurance entered into in Louisiana, provides for a basic five-day notice before effective cancellation of coverage under an insurance policy. The Code expressly does not apply to certain temporary life insurance binders, however, because Section E provides:

E. This Section shall not apply to temporary life insurance binders nor to contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid, nor to the contracts provided in Part XV of this Chapter.

La.Rev.Stat. 22:636(E) (1959).

The critical question as to the statutory five-day notice requirement, then, is whether this "Prepayment Receipt" is a "temporary life insurance binder" expressly excluded from the notice requirement. The answer to this question turns on whether "temporary life insur-

ance binders," as referred to in Section E, is modified by the clause "which do not contain a provision for cancellation prior to the date to which premiums have been made."

In construing this section, the District Court concluded that the only time notice is not required to terminate temporary insurance is when no premium is paid for it. The Court said:

> We conclude that from a grammatical sense the adjectival clause beginning "which do not" modifies not only "contracts of life or health and accident insurance" but also "temporary life insurance binders." The failure of the Legislature to insert a comma after "binders", while using one after "paid", suggests a law-making intent to have the adjectival clause attach to temporary life insurance binders.

> Moreover, our conclusion is buttressed, in fact impelled, by the overall scheme of Section 636. Paragraph "A" requires notice of cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer. This rule has three exceptions (the third need not be discussed). Subsection "A" requires notice of cancellation and Subsection "E" clearly excepts contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid. If read literally, the second exception would relieve insurance companies of giving notice where the policy contained no provision for cancellation prior to the date to which premiums have been paid. Such a conclusion is nonsensical. The reasonable explanation is that where a policy of life or health and accident insurance is issued but no premium is paid, then the insurance company could cancel without notice.

The statutory construction principle requiring restrictive interpretation of exceptions demands that we attach the adjectival clause to temporary life insurance binders. Therefore, failure to pay the premium when a "temporary life insurance" policy is issued obviates notice of cancellation. The consequence of this is to have Subsection "E", in its first and second exceptions, parallel in an exclusory manner, the provisions of Subsection "A."

Although we acknowledge that Subsection E constitutes an exception from the general rule requiring notice and, as such, must be narrowly construed, the settled rules governing statutory construction and the very nature of temporary life insurance require that we adopt a view different from the District Court.

First, under the "doctrine of the last antecedent," relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote. See, e.g., Mandel Bros. v. FTC, 254 F.2d 18 (7th Cir. 1958), rev'd on other grounds, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959); United States ex rel. Santarelli v. Hughes, 116 F.2d 613 (3d Cir. 1940); 82 C.J.S. Statutes § 334 (1953).

Second, as a general rule, the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately. Hence, language in a clause following a disjunctive is considered inapplicable to the subject matter of the preceding clause. See, e.g., In Re Rice, 83 U.S. App.D.C. 26, 165 F.2d 617 (1947); 82 C.J.S. Statutes § 335 (1953). Here the disjunctive "nor" sets off "temporary life insurance binders" from "contracts of life or health and accident insurance."

Third, under the District Court's construction of Subsection E, the exemption loses its meaning when applied to temporary life insurance. Under such construction, temporary insurance may be cancelled without the statutory five-day notice only when the premium has not been paid. This presupposes a form of temporary insurance that is not prepaid. But, the payment of the premium at the time of the application is essential to the issuance of temporary insurance. The

temporary insurance contract itself is in the form of a receipt for that premium.

Fourth, a construction of Subsection E so that it exempts "temporary life insurance binders . . . which do not contain a provision for cancellation prior to the date to which premiums have been paid" ignores another fundamental characteristic of temporary life insurance. Because temporary life insurance only runs for the time between the application and its acceptance or rejection, no premium can be said to have been paid to any certain date.

■ In view of these reasons, we hold that the five-day notice required by the Louisiana Insurance Code is inapplicable to the policy of temporary insurance before us in this case.

■ Before the temporary insurance terminated, however, it was necessary that the Company reject the application. We think that any reasonable interpretation of the policy would lead to the conclusion that this means a completed rejection—not a decision by an employee in the Company to reject—but the corporate act of rejection. We do not see how the Company, as a legal entity, could have rejected the application within the terms of the "Prepayment Receipt" unless it conveyed this information to the applicant. This is not a case of mere nonacceptance, where something must be done before the policy goes into force, as in the case of an application that becomes binding "upon approval by the home office." Under such contracts, unless that "something" is done, there is no insurance coverage. Inaction by the Company leads to no insurance. In this case, there is insurance which continues until the Company acts. It seems to us that action requires some outward thrust from the corporation—some communication to the applicant.

Louisiana holds that the law between the parties is to be found in the insurance policy, in this case, the "Prepayment Receipt."

It is well settled that policies of insurance are contracts between parties and as such they are the law between them. LSA–C.C. Article 1901; Rogillio v. Cazedessus, 241 La. 186, 127 So. 2d 734 (1961). Where there are ambiguities and provisions of doubtful meaning they are to be resolved against the insurer but courts are not allowed to gerrymander provisions that are clear upon their face which would alter terms or change their import. LSA–C.C. Article 1945 et seq.; Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939).

Cormack v. Prudential Insurance Co. of America, 259 So.2d 340, 343 (La.App. 1972).

"The words of a contract are to be understood, like those of a law, in common and usual signification, without attending so much to grammatical rules, as to general and popular use." LSA–C.C. Art. 1946 (1973); Prestenback v. Prudential Ins. Co. of America, 257 So.2d 698, 699 (La.App.1972).

We think that if not clear, then resolving the ambiguity against the Company, the provision in the "Prepayment Receipt" that the insurance may be terminated by rejection of the application, given common and usual signification, would require a communicated rejection to the applicant.

The whole purpose of the kind of temporary binder issued in this case is to assure an applicant that he is insured *until* the Company acts—not that he is insured *if* the Company acts. It would abort the designed purpose of the Company's program to hold that the applicant could become uninsured without being notified. The entire thrust of the "Prepayment Receipt" is that the applicant will be insured until he hears from the Company. If it were not so, the Company could easily have so provided.

The District Court, in construing the statute, reasoned that the "Legislature intended notice of cancellation to be given in order for the applicant to reapply with another insurance company" and "that notice of cancellation is a *sine qua non* for rejection of coverage." Al-

though we think that the reasons find no support in the words of the statute, which plainly exempts temporary insurance binders from the five-day notice, similar reasons support our interpretation of the contract which binds the parties.

On the record before us, there was not sufficient corporate action that would amount to rejection. The stamping of the application as "rejected" and the inter-office communications that led to the notice that was sent on October 6, the day after the insured's death, amounted to nothing more than the inner workings of the corporation. There could have been no "rejection" within the terms of the contract until some communication was sent to the insured. We need not here decide whether the notice had to be actually received by the applicant.

No case precisely on point can be found in the reported decisions dealing with temporary or interim life insurance. Prudential contends that Leube v. Prudential Ins. Co., 147 Ohio St. 450, 72 N.E.2d 76 (1947), has ruled adversely on this point. In *Leube*, the Ohio Supreme Court held that the insurer was not required to give notice of the rejection of the application for the permanent insurance in order to terminate the existing temporary insurance. In *Leube*, however, the receipt provided that the insurance proceeds would be paid if death occurred after the date of the receipt but prior to the issue of the policy "provided said application is approved and accepted at the home office of the company." 72 N.E.2d at p. 77. The Court said:

> It seems too clear to require argument, that the insurer may not be lawfully required to pay a loss against which it had specifically refused to insure or be held liable when it had definitely rejected the application for insurance and thereby refused to accept the risk.

72 N.E.2d at p. 78.

In the case at bar, the Company insured the applicant for the interim period until it rejected the application, and thus was liable on the interim insurance risk, even if it refused to accept the permanent risk by rejection of the application. Thus, it is not held liable on a risk that it refused to accept.

With this view, then, we hold that the District Court was in error in finding that the policy had been rejected within the terms of the "Prepayment Receipt" on October 3. No rejection took place until after the death. There being no rejection, the temporary insurance policy was not cancelled, and was in full force and effect when the insured died. Thus, though by a different road, we arrive at the same destination as the District Court and conclude that the beneficiary is entitled to judgment on the temporary insurance binder.

Affirmed.