**In re RICE.**

No. 9386.

United States Court of Appeals District of Columbia.

Reargued Oct. 9, 1947.

Decided Dec. 15, 1947.

EDGERTON, Associate Justice, dissenting.

Mr. A. K. Shipe, of Washington, D. C., with whom Messrs. Walter M. Bastian, Leo A. Rover and John J. Wilson, all of Washington, D.C., were on the brief, for appellant.

Mr. John D. Lane, Asst. U. S. Atty., of Washington, D. C., with whom Messrs. George Morris Fay, U. S. Atty., and Sidney S. Sachs, Asst. U. S. Atty., both of Washington, D. C., entered appearances, for the appellee United States.

On Rehearing.

Before EDGERTON, CLARK and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

The problem presented by this appeal is whether one who owns taxicabs and rents them to others for operation is in the status of a public utility under the law of this jurisdiction, for upon the answer to that question depends the applicability vel non of

the now expired Emergency Price Control Act of 1942, as amended,[1] and Maximum Price Regulation 571 [2] promulgated thereunder, to Carlton L. Rice, who owned and rented taxicabs in the District of Columbia.

The Regulation clearly purported to cover, in general, the rental of taxicabs. Apparently suspecting that Rice had violated the rental ceilings prescribed therein, the Office of Price Administration, which was the agency charged with administering the Act, issued a subpoena duces tecum requiring him to appear before its "District Enforcement Attorney," and to bring with him all records of cab rentals from February 3, 1945, to March 26, 1946, the date the subpoena was served. The subpoena was signed, not by the Price Administrator, but by his District Deputy.

Rice appeared at the designated time and place but refused to give any information, assigning several grounds for his refusal. Thereupon the Price Administrator filed in the District Court of the United States for the District of Columbia an application for an order requiring compliance with the subpoena. Rice moved to dismiss the application, again assigning numerous supporting grounds, one of which he stated as follows: "The respondent is engaged in the business of a common carrier and public utility in the District of Columbia and jurisdiction of the petitioner over his business is expressly precluded by the Emergency Price Control Act." The District Court directed Rice to obey the subpoena, whereupon he appealed.

At the first hearing before this court, Rice argued, among other things, that the Administrator could not delegate to a subordinate the power of signing and issuing a subpoena. The same contention had theretofore been denied by us in Raley et al. v. Porter, 81 U.S.App.D.C. 156, 156 F.2d 561, but in Porter v. Mohawk Wrecking & Lumber Company, 156 F.2d 891, the United States Court of Appeals for the Sixth Circuit reached a contrary conclu-

sion. The Supreme Court granted certiorari in both cases in order to resolve the conflict, but had not announced a decision when the present case was originally argued and submitted in this court, so we withheld action awaiting its ruling. On April 28, 1947, in Fleming v. Mohawk Wrecking & Lumber Company, 331 U.S. 111, 67 S.Ct. 1129, the Supreme Court affirmed the Raley case and reversed the Mohawk case, deciding that the Administrator could delegate the power to issue subpoenas. Soon thereafter we handed down an opinion affirming the order of the District Court in this case; but later we granted a rehearing and the case was argued before us a second time.

As we have said, the decisive question now before us is whether the appellant was engaged in the business of a common carrier. If he was, he was not subject to price control under the Emergency Price Control Act of 1942, since § 302(c) of that Act provides that "nothing in this Act shall be construed to authorize the regulation of * * * (2) rates charged by any common carrier or other public utility, * * *".

It is necessary, therefore, to examine the law of the District of Columbia to see whether a business such as Rice conducted is here classified as a common carrier and, if so, whether it is validly so classified.* Title 43 of the D. C. Code (1940) creates the Public Utilities Commission and provides for the regulation of public utilities by that body. Under its provisions (§ 103) the term "public utility" as used in the first 10 chapters of the title includes every common carrier. Section 111 is to the effect that "The term 'common carrier' when used in chapters 1–10 of this title includes * * * every * * * person, * * * owning, operating, controlling, or managing any agency or agencies for public use for the conveyance of persons or property within the District of Columbia for hire."

Since the disjunctive "or" is used

---

[1] 56 Stat. 23 et seq., 50 U.S.C.A.Appendix, § 901 et seq.

[2] 10 Fed.Reg. 1150.

* The exempting clause of the Price Control Act applies to any business classified

by the state as a public utility and regulated as to rates by the state. Davies Warehouse Co. v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635.

in the statutory language "owning, operating, controlling, or managing," any person who owns such facilities, regardless of whether he personally operates them, is a common carrier subject to regulation by the Public Utilities Commission of the District.[3] It follows that Rice was, because of the statute,[4] in the business of a common carrier and so entitled to exemption from wartime price control, unless the fact that the rentals which he charged were not actually being regulated by the Public Utilities Commission served to nullify the exemption of § 302(c) and to subject him to the control of the Administrator.

The United States Emergency Court of Appeals, in Dunham & Reid, Inc., et al. v. Porter, 157 F.2d 1022, 1023, rejected the Price Administrator's contention that the exempting clause must be limited to those common carriers whose rates are regulated by other state or federal authorities, and concluded that to construe the term "common carrier" in the exempting clause as though it read "common carriers whose rates are otherwise regulated" would be to amend the statute under the guise of construing it. Power to regulate the appellant's rental charges is clearly conferred on the Public Utilities Commission by the provisions of the District Code, regardless of the fact that it has not yet been exercised; so we hold that Rice was exempt from regulation by the Office of Price Administration.

This conclusion is not in conflict with Reeves v. Bowles,[5] where we had be-fore us a factual situation similar to that involved in the present case. There the appellants argued that they were not covered by the then prevailing OPA Regulation, and that they were common carriers under the jurisdiction of the Public Utilities Commission and therefore not subject to regulation by the Office of Price Administration. We held that "Maximum Price Regulation 165, § 101(c) (4), clearly includes charges for the rental of all automobiles," noted the contentions of the Price Administrator that "Appellants are not common carriers because they perform no transportation service for hire" and "that if they be considered as common carriers their rental charges are not actually regulated by the Public Utilities Commission," and then disposed of the matter by saying, "Both of these arguments make a very substantial and persuasive case in support of the validity of the Regulation. We, therefore, have no jurisdiction to declare it invalid. The power to consider that issue has been transferred by the Act to the United States Emergency Court of Appeals."

It is thus seen that this court's decision in the Reeves case was no more than a holding that only the Emergency Court of Appeals could declare a price regulation to be invalid. The opinion did not decide whether Reeves and his fellow appellants were common carriers within the meaning of the District Code, but expressly disclaimed doing so by referring to that question as one "not now before the court."[6]

---

[3] In statutory construction the word "or" is to be given its normal disjunctive meaning unless such a construction renders the provision in question repugnant to other provisions of the statute. Gay Union Corp. v. Wallace, Sec. of Agriculture, 71 App.D.C. 382, 387, 112 F.2d 192, 197, certiorari denied, 310 U.S. 647, 60 S.Ct. 1098, 84 L.Ed. 1414. Cf. Hartford Electric Light Co. v. Federal Power Comm'n, 2 Cir., 131 F.2d 953, 965.

Moreover, under a similar disjunctive statutory expression of "owning or operating," it has been administratively determined by the Federal Power Commission that it has jurisdiction over one who owns, but leases to another for operation, power generating facilities. Re Indiana Hydro-Electric Power Co., 51 PUR(NS) 55.

[4] It is, of course, true that legislative fiat cannot convert into a public utility a business which actually is not of that class, but that principle has no application here, for the rental which the driver of a taxicab is required to pay plays a large part in the determination of a permissible fare. Clarksburg Light & Heat Co. v. Public Service Commission, 84 W. Va. 638, 100 S.E. 551.

[5] 80 U.S.App.D.C. 207, 151 F.2d 16, 17. Three other cases were heard with the Reeves case.

[6] This meant, of course, that the court was disposing of the case on another ground, without reaching the question whether Reeves was exempt as a common carrier. That issue was in fact presented, but was not decided, as is shown by footnote 2 to the opinion in

We are here considering, however, not the validity of Regulation 571, but the coverage of the Price Control Act itself; for in the absence of coverage, the Regulation could not apply. It is one thing to invalidate a price regulation; that may be done only by the Emergency Court. It is quite a different thing to decide that a price regulation, valid when applicable, does not apply to an appellant who is a common carrier within the exemption of the statute. The latter action is, strictly speaking, not an invalidation of the regulation, but a determination that, because of the statutory exemption, the Act does not cover the particular situation under consideration. Farmers' Gin Co. v. Hayes, D.C., 54 F. Supp. 47, 55; Bowles v. Nu Way Laundry Co., 10 Cir., 144 F.2d 741, 746, certiorari denied, 1945, 323 U.S. 791, 65 S.Ct. 431, 89 L.Ed. 631; Bowles v. Wheeler, 9 Cir., 152 F.2d 34, 37, certiorari denied, 1945, 326 U.S. 775, 66 S.Ct. 265, 90 L.Ed. 468.[7]

That the Emergency Price Control Act of 1942 did not apply to an unregulated common carrier having been settled by Dunham & Reid, Inc., et al. v. Porter, our only task here has been, as we said at the outset, to ascertain whether Rice was a common carrier. Of that we have no doubt. The opinion heretofore handed down in this case is vacated, and the order of the District Court is reversed.

Reversed.

EDGERTON, Associate Justice (dissenting).

Since Regulation 571 purported to cover the renting of taxicabs, the question is whether such coverage was authorized by the Emergency Price Control Act.

We have previously refused to decide this question, on the ground that it was within the exclusive jurisdiction of the Emergency Court of Appeals under § 204(d) of the Emergency Price Control Act, 50 U.S.C., Supp. V, § 924(d). Reeves v. Bowles, 80 U.S.App.D.C. 207, 151 F.2d 16. It seems to me clear that the Reeves case was right and that the court now overrules it.

In the Reeves case the appellants urged in their brief, without persuading the court, the precise point by which the court is now persuaded. They said: "Particular reference is at this time made to Section 111 of Title 43 of the D.C.Code of 1940, under which Title the Public Utilities Act is set forth. This particular section in defining the term 'common carrier' says: 'The term common carrier * * * includes * * * every corporation * * * partnership and person * * * owning, operating, controlling or managing any agency or agencies for public use for the conveyance of persons * * * within the District of Columbia for hire * * *.' And again in Section 103 of Title 43 D.C.Code of 1940, we find: 'The term public utility * * * shall mean and embrace every * * * common carrier * * *.'" With this argument before us, we decided in the Reeves case that the alleged invalidity of OPA regulation of taxicab rentals remained a substantial

---

Reeves v. Bowles, supra, which is as follows: "D.C.Code 1940, § 43—301. There has been no decision by the Commission or any court declaring appellants to be common carriers within the Public Utilities Act. Even if the Commission has jurisdiction, a question not now before the court, the record shows that the charges made by appellants are not presently regulated by the local agency."

It might be said that inferentially the language just quoted amounts to a decision that Reeves was not a common carrier because his charges were not then being regulated by the Public Utilities Commission. But, after the Reeves opinion was written, the United States Emergency Court of Appeals decided in the Dunham & Reid case that a regulation purporting to fix a ceiling price on transportation charges does not apply to a common carrier, despite the fact that the carrier's charges were at the time not regulated by any other authority.

[7] Decisions of the United States Emergency Court of Appeals are to the same effect. In Gordon v. Bowles, 153 F.2d 614, 615, it was said by that court: "* * * with the propriety of complainant's classification as such, involving, as it does, interpretation and application of the regulations to him, this court is not concerned. Those questions are left to the District Court for determination in enforcement or declaratory actions." Compare Taylor v. Porter, Em.App., 156 F.2d 805, and Collins v. Bowles, Em.App., 152 F.2d 760.

question which lay within the exclusive jurisdiction of the Emergency Court of Appeals.

I do not understand the court's suggestion that it is not overruling the Reeves case. (1) The court points out that in that case we disclaimed deciding, as "not now before the court," the question whether renters of taxicabs were common carriers and public utilities within the meaning of the District Code and therefore within the jurisdiction of the Public Utilities Commission. But in saying that that question is before us now the court overrules the Reeves case, for it is no more before us now than it was then. Its answer has a bearing upon the question whether renters of taxicabs are public utilities within the meaning of the Price Control Act and therefore exempt from OPA regulation; but we held in the Reeves case that we have no power to decide this latter question. (2) The court says that its present "action is, strictly speaking, not an invalidation of the regulation, but a determination that, because of the statutory exemption, the Act does not cover the particular situation under consideration." But this might as well have been said of the action that we decided we could not take in the Reeves case as of the action the court is now taking. Moreover the court's distinction is, I think, without a difference. To hold that the Act does not cover the renting of taxicabs, and therefore the Regulation, which purports to cover that business, cannot be enforced against it, is to hold that the Regulation is invalid with regard to that business. This is what the court now decides and what we held in the Reeves case that we had no power to decide.