**DESARROLLOS METROPOLITANOS, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent,**

**W. J. Usery, Jr., Secretary of Labor, Party in Interest.**

**No. 76–1171.**

United States Court of Appeals, First Circuit.

March 23, 1977.

that the finding of a repeat violation was not supported by substantial evidence and that the regulation under which the fine was assessed violates the equal protection component of the Fifth Amendment. We disagree with both arguments and therefore deny the petition.

■ 29 C.F.R. § 1926.500(d)(1) requires that

> "Every open-sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing or the equivalent . . . on all open sides . . . . The railing shall be provided with a standard toeboard . . . ."

At the hearing, it was uncontradicted that Metropolitanos was cited for an open-side violation in August, 1973, which it did not contest, and that an inspection in November, 1974, at a construction site within 2 miles of the one cited in 1973, resulted, *inter alia,* in a second citation for an open-side violation. This latter citation was contested, but the OSHA inspector, two employees of petitioner and Metropolitanos' own expert all testified that the violation occurred. Several photographs were also introduced, showing unguarded or inadequately guarded open-sides on the 14th floor, with employees working within 3–6 feet of the edge. It is thus clear that the finding of multiple violations is supported by the record.

We are also urged to reverse the Commission's decision on the basis that the guidelines defining "repeat violations" violate the Constitutional guarantee of equal protection of the laws. Petitioner notes that it, as a company with no fixed establishments, may be found guilty of a repeat violation if transgressions occur at two or more of its moveable sites, whereas repeat violations cannot be predicated upon actions at separate locations for businesses with fixed establishments, such as factories.[1]

Horacio R. Subira Hijo, San Juan, P. R., on brief for petitioner.

William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol., Washington, D. C., for Occupational Safety and Health, Michael H. Levin, Counsel, Appellate Litigation, Allen H. Feldman, Asst. Counsel, Appellate Litigation, and Marc R. Hillson, Atty., U. S. Dept. of Labor, Washington, D. C., were on brief for respondents.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

## PER CURIAM.

Petitioner Metropolitanos appeals from the Commission's affirmance of a fine of $300 imposed by the administrative law judge for a repeat violation. It argues both

1. "For purposes of considering whether a violation is repeated, citations issued to employers having fixed establishments (e. g., factories, terminals, stores) will be limited to the cited establishment. For employers engaged in businesses having no fixed establishments (construction, painting, excavation) repeated violations will be alleged based on prior violations

Additionally, Metropolitanos urges that the standard is also arbitrary since, even for businesses with peripatetic sites, a repeat violation can be found if citations are assessed within a state, but not if violations occur at sites in more than one state.

■ In regard to the distinction between fixed and moveable sites, both sides agree that in the area of economic or social welfare legislation, "when the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed."[2] *Morey v. Doud,* 354 U.S. 457, 464, 77 S.Ct. 1344, 1349, 1 L.Ed.2d 1485 (1957); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911). *See Dandrige v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). There is clearly a reasonable basis for the distinction between permanent and transient work sites. A company with floating work sites will have little incentive to ensure full compliance with safety standards at each new job site from the outset if it has one almost free bite at the apple at each such site. The Commission quite reasonably concluded that an additional incentive was not needed in the case of employers with stable work sites. Because this latter group of employers will envision continuous operations spanning a long period of time, they will have every incentive to comply fully with the standards. We recognize that the classification is not precise, but it is a rational one and that is all that is required for it to pass Constitutional muster.·

■ As to the alleged arbitrariness in distinguishing between intra and interstate construction businesses, petitioner itself ac-

knowledges that it can be sustained if it serves administrative convenience. In order to pass Constitutional muster, the classification must "approximate" even if it does not "precisely mirror, the results that case-by-case adjudication would show." *Mathews v. Lucas,* 427 U.S. 495, 509–510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976). Here, the underlying presumption might well be that construction companies, even those national in scope, subject their intrastate operations to a centralized authority within each state. There is nothing in the record or the briefs to establish, one way or the other, if this is correct. However, since "the burden remains upon the appellees to demonstrate the insubstantiality of that relation", *id.* (citing approvingly *Lindsley, supra,* 220 U.S. at 78–79, 31 S.Ct. 337), in the absence of petitioner's having met that burden, the regulation will be sustained.

Moreover, though not necessary for our decision, we would also note the practical obstacles that OSHA would face in the absence of some classification similar to the one challenged here. Keeping in mind that the goal of the program is to promote worker safety;[3] and that this goal is advanced by increasing the penalties assessed upon employers' who repeatedly violate safety regulations, it is logical as we noted earlier, to coordinate repeat violations with those portions of a business which have authority over workers' safety. If this regulatory classification were to be replaced with case-by-case adjudications, then OSHA would require an increased staff to determine, after each inspection, whether the safety program of that employer was centralized or delegated before it could assess the appropriate fine. This would inflate the cost of administering the program without realizing any benefit in carrying out the legislative goals.

occurring anywhere within the same State." U. S. Dept. of Labor, Occupational Safety and Health Admin. Field Operations Manual Chap. VII B. 5. e.

2. Since petitioner does not challenge the regulation's being reasonably related to the purpose of the authorizing statute, these Supreme Court

cases set out the appropriate standard of review.

3. "The Congress declares it to be its purpose and policy . . . to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . ." 29 U.S.C. § 651(b).

Petitioner also objects to the fine being affected by the size of its business.[4] Since the goal of the program is to promote safety, a $100 fine might be an effective prod for a small business, but be ignored by a company like Metropolitanos doing $10,-000,000 worth of construction annually.

Finally, petitioner's reliance upon our decision in *Cape & Vineyard Div. v. Occupational S. & H. Rev. Comm'n.*, 512 F.2d 1148 (1 Cir., 1975) is misplaced. Unlike the facts in that case, here the regulation is specific and was well known to petitioner's officers. Moreover, petitioner here knew of the open-sided danger to which some of its workers were exposed[5] and is thus distinguishable from *Cape & Vineyard* where the employer could not "be held to guard against hazards created by employee conduct which is not reasonably foreseeable." *Cape & Vineyard, supra,* at 1152.

*The petition is denied and the Commission's order affirmed and enforced in full.*

---

4. "The Commission shall have authority to assess all civil penalties provided in this section, giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged . . . ." 29 U.S.C. § 666(i).

5. Petitioner's president testified that he knew of the exposure to "an open edge" during the levelling operation on the flying form, though he thought there was no reason for the workers to get close to the edge. Testimony by others established that this operation did result in workers' being within 3–6 feet of this edge on the 14th floor on the day of the inspection.