**GEORGE HYMAN CONSTRUCTION COMPANY, Appellant,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, etc., Appellee.**

No. 77–1591.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1978.

Decided Aug. 22, 1978.

As Amended Oct. 17, 1978.

Peter Chatilovicz, Washington, D. C. (Donald W. Savelson, Arent, Fox, Kintner Plotkin & Kahn, Washington, D. C., on brief), for appellant.

Jeffrey L. Berger, Atty., U. S. Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, U. S. Dept. of Labor, Washington, D. C., on brief), for appellee.

E. Carl Uehlein, Jr. and George A. Stohner, Morgan, Lewis & Bockius, Washington, D. C., on brief, for amicus curiae, Associated Gen. Contractors of America, Inc.

Before HAYNSWORTH, Chief Judge, and WINTER and LAY,* Circuit Judges.

LAY, Circuit Judge.

George Hyman Construction Co. appeals from a decision of the Occupational Safety & Health Review Commission (OSHRC) assessing penalties for repeated violations under the Occupational Safety & Health Act (OSHA), 29 U.S.C. §§ 651–678. Hyman Construction Co. is a large general contractor that performs work at 20 to 30 worksites at any given time. Each job site employs a different job superintendent who normally remains at the site for the life of the project—anywhere from 18 to 32 months. Hyman employs a safety director who is responsible for safety programs at all worksites.

During a routine inspection of the Hyman Co. construction site of a new jail in Washington, D. C., from April 2 through April 11, 1975, an OSHA compliance officer noted several, non-serious violations[1] of crane-safety, guard rail and other standards for which Hyman had been previously cited at other sites in the Washington area. Of the six hazardous conditions observed and cited as repeated violations, four had been cited once before while two had been cited twice before. The prior citations had been issued from 2½ months to a year prior to the inspection of the worksite and had oc-

curred at projects within one to five miles from the jail worksite. Hyman was therefore charged with repeated violations under 29 U.S.C. § 666(a).

*Jurisdiction.*

The administrative law judge (ALJ) found the violations to be repeated within the meaning of the Act. The Commission's decision upon review of this finding was divided. Then Chairman Barnako urged that the case be remanded to the ALJ for the taking of additional evidence.[2] Commissioner Cleary, now Chairman, voted to affirm the law judge's decision; while Commissioner Moran voted to reverse the law judge on the ground that the violations were not repeated within the meaning of the Act. It has been suggested that in view of the absence of a quorum under § 12(f) of the Act, 29 U.S.C. § 661(e), no final agency action has taken place and therefore no reviewable order has been entered.[3]

■ As a result of the Commission's divided decision Chairman Barnako directed that the ALJ's "decision . . . becomes the final action of the Commission." 5 OSHC at 1318. Although we recognize that there is divided opinion within the Commission regarding the correctness of the ALJ's decision we hold Chairman Barnako's order

---

* Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. For a violation not of a serious nature, a penalty of up to $1,000 may be assessed. 29 U.S.C. § 666(c). A serious violation of the Act is a violation likely to cause death or serious physical harm to an employee. *See* 29 U.S.C. § 666(j). For a serious violation a penalty of up to $1,000 must be assessed. 29 U.S.C. § 666(b). Section 17(d), 29 U.S.C. § 666(d), also permits a fine of up to $1,000 per day for failure to correct a violation for which a citation has been issued. Title 29 U.S.C. § 666(e) makes willful violations of the Act which result in the death of an employee subject to criminal penalties up to a $10,000 fine and six months imprisonment for the first such conviction.

2. Commissioner Barnako suggested an ad hoc test for determining whether an infraction constituted a repeated violation. He would require the Secretary to show flagrant employer conduct that included "a substantially similar vio-

lation . . . under the control of the supervisor who had responsibility for abating the first violation." *George Hyman Construction Co.,* No. 13559, 5 OSHC 1318, 1322 (BNA 1977).

3. Section 12(f), 29 U.S.C. § 661(e) provides:

For the purpose of carrying out its functions under this Act, two members of the Commission shall constitute a quorum and official action can be taken only on the affirmative vote of at least two members.

In the absence of a third member of the Commission, where the two Commissioners filed divided votes, two circuits have found, pursuant to 12(f), no reviewable order. *See Cox Bros., Inc. v. Secretary of Labor,* 574 F.2d 465, 467 (9th Cir. 1978); *Merit Construction Co. v. OSHRC,* 573 F.2d 1315 (9th Cir. 1978); *Shaw Construction, Inc. v. OSHRC,* 534 F.2d 1183, 1185–86 (5th Cir. 1976).

sufficient to make it reviewable on appeal.[4] Unless the order is appealable the employer is placed in a jurisdictional limbo that would prevent him from seeking judicial relief from a possibly erroneous decision of an ALJ. We have grave doubt that Congress intended the quorum requirement of § 12(f) to serve as a bar to judicial review.[5]

### The Enforcement Scheme.

Section 17(a) of the Act, 29 U.S.C. § 666(a), provides:

> Any employer who willfully or repeatedly violates the requirements of section 5 of this Act, of any standard, rule, or order promulgated pursuant to section 6 of this Act, or of any regulations prescribed pursuant to this Act, shall be assessed a civil penalty of not more than $10,000 for each violation.

The Secretary has published guidelines in an Occupational Safety & Health Administration "Field Operations Manual" setting forth certain criteria for the determination of a repeated violation. The petitioner, joined in amicus curiae by the Associated General Contractors of America, Inc., challenges these guidelines, particularly with reference to their alleged overall unfairness to the construction industry.

### Fixed and Non-Fixed Worksites.

A specific challenge is made to that portion of the guidelines which differentiates between fixed and non-fixed worksites. The guideline, as applied by the Secretary and adopted by the ALJ, reads in part:

> e. For purposes of considering whether a violation is repeated, citations issued to employers having fixed establishments (e. g., factories, terminals, stores) will be *limited to the cited establishment.* For employers engaged in businesses having no fixed establishments (construction, painting, excavation) repeated violations will be alleged based on prior violations occurring anywhere within the same State.

Field Operations Manual, ch. VIII, § (B)(5)(e) (emphasis in original).

The petitioner urges that the Act evidences no legislative intent to discriminate between fixed and transient employers. Thus it urges that the criteria for a repeated violation should be uniformly applied regardless of whether the situs of work is fixed or not, and accordingly that a penalty should only be imposed for a violation recurring at the same job site. Hyman further argues that job superintendents change and work forces become diversified at different jobs and that it is irrational to assess penalties when corporate responsibili-

---

**4.** Compare Title 29 U.S.C. § 661(i) which declares that when no Commissioner directs review of the ALJ's decision the law judge's decision becomes the final order of the Commission. Under these circumstances, the ALJ's holding is subject to review in the court of appeals under 29 U.S.C. § 660.

**5.** A review of the legislative history of § 12 of the Act reveals no intent to limit judicial review of the Commission's decisions. The evident intent in enacting § 12 was to speed review of administrative citations and to ensure independent review of those citations. *See* Senate Subcomm. on Labor, Comm. on Labor & Public Welfare, 92d Cong., 1st Sess., Legislative History of the Occupational Safety & Health Act of 1970, at 392, 463, 470, 991 (1971) (hereinafter cited as Legislative History).

Allowing the ALJ's decision to stand is analogous to the case of split decision affirmances by a court of appeals or the Supreme Court under which the lower court decision is allowed to stand. Mr. Justice Field noted in

*Durant v. Essex Co.,* 74 U.S. (7 Wall.) 107, 112, 19 L.Ed. 154 (1868), that:

> In cases of appeal or writ of error in this court, the appellant or plaintiff in error is always the moving party. It is affirmative action which he asks. The question presented is, shall the judgment, or decree, be reversed? If the judges are divided, the reversal cannot be had, for no order can be made. The judgment of the court below, therefore, stands in full force. It is, indeed, the settled practice in such case to enter a judgment of affirmance; but this is only the most convenient mode of expressing the fact that the cause is finally disposed of in conformity with the action of the court below, and that that court can proceed to enforce its judgment. The legal effect would be the same if the appeal, or writ of error, were dismissed.

*See also Neil v. Biggers,* 409 U.S. 188, 192, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Etting v. Bank of United States,* 24 U.S. (11 Wheat.) 59, 78, 6 L.Ed. 419 (1826).

ty varies from site to site. Hyman likewise urges that the guideline requiring that the violations must occur in the same state is arbitrary and irrational.[6] We respectfully must disagree.

As petitioner acknowledges, the Secretary's guidelines have been attacked before. In *Desarrollos Metropolitanos v. OSHRC*, 551 F.2d 874, 876 (1st Cir. 1977), a constitutional challenge was advanced along lines similar to those urged upon this court. In rejecting the contention that the guidelines violate the due process clause, the First Circuit stated:

> There is clearly a reasonable basis for the distinction between permanent and transient work sites. A company with floating work sites will have little incentive to ensure full compliance with safety standards at each new job site from the outset if it has one almost free bite at the apple at each such site. The Commission quite reasonably concluded that an additional incentive was not needed in the case of employers with stable work sites. Because this latter group of employers will envision continuous operations spanning a long period of time, they will have every incentive to comply fully with the standards. We recognize that the classification is not precise, but it is a rational one and that is all that is required for it to pass Constitutional muster.

Petitioner urges that its challenge to the Secretary's guidelines is based upon statutory interpretation and is therefore distinguishable from the broadside constitutional attack confronted in *Desarrollos*. Nonetheless, we find nothing which militates against the Commission's adoption of this guideline as a reasonable interpretation under the Act. An agency has wide latitude in setting up an enforcement scheme that will best serve the convenience of the agency as long as the scheme is a rational one in light of the statute's overall purpose. *Cf. Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

The validity of the state boundary provision contained in the guidelines is not factually before us since all of Hyman's construction sites were located in the District of Columbia.[7]

*Repeated Violations.*

We now come to the more difficult issue which divided the Commission; that is, setting forth an acceptable and proper basis for determining what constitutes a repeated violation under the Act. Although we have previously interpreted "willfully" under 29 U.S.C. § 666(a), *see Intercounty Construction Co. v. OSHRC*, 522 F.2d 777, 779–80 (4th Cir. 1975), *cert. denied*, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976), we have not addressed the question of what constitutes a repeated violation under the Act.

Several plausible suggestions have been proposed by the parties and the individual Commissioners. There appears to be little agreement regarding the efficacy and acceptability of any one of the approaches. The Secretary's guidelines adopt a per se approach that permits finding a repeated violation even though the infraction is inadvertent or accidental.

The guidelines read:

> a. Violation of any standard regulation, rule, order or the general duty clause may be cited as repeated under Section 17(a) where, upon reinspection, another violation of the *previously cited* section of a standard, regulation, rule,

---

**6.** Hyman contends:

Accordingly, a construction employer cited for a violation of the Act at a worksite in a Northern Virginia suburb of Washington, D. C. (e. g., Alexandria) could not be cited for a repeated violation for violating the same standard at a jobsite in the District of Columbia, which may be just minutes away. Yet, the same employer (with the worksite in Alexandria) could be cited for a repeated violation if the second violation occurs at a work- site 200 miles away in southwestern Virginia. This absurd result, created by the Secretary's arbitrary standard, could not have been intended by Congress when it enacted the job safety and health law.
Brief for Petitioner at 20.

**7.** We do note, however, as petitioner concedes, a rational basis for using state boundaries within the guidelines was found in *Desarrollos Metropolitanos v. OSHRC*, 551 F.2d at 876.

order or condition violating the general duty clause is found.

b. *Repeated violations differ from willful* violations in that they may result from an inadvertent, accidental or ordinarily negligent act. A willful violation need not be one for which the employer has been previously cited. Where a repeated violation also meets the criteria for willful, a citation for willful violation will be issued.

Field Operations Manual, ch. VIII, § (B)(5)(a), (b) (emphasis in original).

The petitioner asserts that only those violations which demonstrate that the employer has "flaunted" the requirements of the Act should be cited as repeated violations. In so doing, Hyman urges that we adopt the Third Circuit's construction of 29 U.S.C. § 666(a), which, in effect, equates a repeated violation with a willful one. In *Bethlehem Steel Corp. v. OSHRC*, 540 F.2d 157 (3d Cir. 1976), the Third Circuit rejected the Secretary's guidelines and held that an employer cannot be cited for a repeated violation unless (1) there have been at least two recurrences of the original violation, and (2) the employer's actions have constituted flagrant misconduct. *Id.* at 160–62. This rationale was also proposed by Commissioner Moran in the divided opinion below. *See* 5 OSHC at 1328.

■ We reject this view. The contention that for a violation to be repeated there must be two or more prior violations rests on a strained semantical argument that the word repeated in its adverbial form—repeatedly—could only mean an action which takes place "again and again." *See Todd Shipyards Corp. v. Secretary of Labor*, 566

F.2d 1327, 1330–31 n. 5 (9th Cir. 1977). Under the circumstances we think a more common usage of the term connotes only that a single prior infraction need be proven to invoke the repeated violation sanction authorized by the Act.[8]

*Flagrant Misconduct.*

Hyman urges that the ALJ's finding must be set aside because none of the violations cited involve flagrant misconduct as defined by the Third Circuit in *Bethlehem Steel.* We again disagree. In *Intercounty Construction Co. v. OSHRC*, 522 F.2d 777 (4th Cir. 1975), *cert. denied*, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976), this court held that the term willful in § 666(a) "means action taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality." *Id.* at 779. The court specifically rejected the need to show malicious intent: "A conscious, intentional, deliberate, voluntary decision properly is described as willful, 'regardless of venial motive.'" *Id.* at 780.

In so holding, we rejected the Third Circuit's definition of willfulness, which required an "obstinate refusal to comply."[9] We said "[t]o require bad intent would place a severe restriction on the statutory authority of OSHA to apply the stronger sanctions in enforcing the law, a result we do not feel was intended by Congress." *Id.* at 780. Our rejection in *Intercounty* of the Third Circuit's interpretation of the "willful" provision compels that we also reject its decision regarding the "repeatedly" provision.

■ An interpretation of the § 666(a) penalty provisions that includes a meaning-

8. Both then Chairman Barnako, and Commissioner Cleary, rejected the need for more than one prior violation in also finding a repeated violation in their opinions in this case. Chairman Barnako noted that:

I do not place any significance on the fact that section 17(a) uses the word "repeatedly" instead of "repeated." In its original form, section 17(a) referred only to willful violations. "Repeatedly" was added after "willfully" was already present in the section. It thus is more likely that "repeatedly" was used instead of "repeated" simply to be in grammatical conformance with "willfully,"

rather than as a conscious choice by Congress to require at least two prior violations. 5 OSHC at 1321.

If more than one prior infraction has occurred, this may properly be factored into the penalty equation to determine the amount of the penalty. *See* § 17(j) of the Act, 29 U.S.C. § 666(i).

9. *See Frank Irey, Jr., Inc. v. OSHRC*, 519 F.2d 1200, 1207 (3d Cir. 1974), *aff'd en banc*, 519 F.2d 1215 (3d Cir. 1975), *aff'd on other points, sub nom. Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977).

ful differentiation between willful and repeated violations appears more consistent with the Act's enforcement scheme as well as the literal terms of § 666(a).[10] The literal terms of § 666(a) establish two categories for which enhanced penalties may be assessed—willful or repeated violations. The crux of the repeated violation penalty is failure to correct safety hazards. As Commissioner Barnako noted below:

> [E]mployers are expected to comply with the Act regardless of whether they have been inspected or cited for alleged violations, and penalties for first instance violation [sic] provide an incentive for such compliance. When an employer has been found to have violated the Act, as evidenced by a final order of the Commission, it is reasonable to expect that employer to take extra precautions to prevent the recurrence of similar violations.

5 OSHC at 1321–22.

Willful violations, on the other hand, contemplate an intentional disregard for the Act's safety standards. *United States v. Dye Construction Co.*, 510 F.2d 78, 82 (10th Cir. 1975); *F. X. Messina Construction Corp. v. OSHRC*, 505 F.2d 701, 702 (1st Cir. 1974). *See also* 5 OSHC at 1320.

In concluding that willful and repeated violation citations were designed to cover only the intentional "flaunting" of the Act, the Third Circuit relied primarily on the fact that the maximum fine for willful or repeated violations may be ten times greater than the maximum penalty for serious violations. *See Frank Irey, Jr., Inc. v. OSHRC*, 519 F.2d at 1207, *and Bethlehem Steel Corp. v. OSHRC*, 540 F.2d at 161–162.

This rationale is difficult to reconcile with the failure-to-abate penalty provided for in § 666(d) which authorizes a civil penalty of up to $1,000 for each day an employer allows a cited violation to continue. Under the Commission's decisions failure-to-abate violations require "a conscious decision in that the employer fails to comply with an order of the Commission of which it has actual knowledge." 5 OSHC at 1320. Thus, the mere fact that an enhanced penalty is provided for in § 666(a) does not suggest that Congress intended willful and repeated violation citations to be appropriate only when an intentional flouting of the Act occurred.[11]

The legislative history of the Occupational Safety & Health Act, although meager, suggests that willful violation citations and repeated violation citations were designed to reach different problems. The provision for repeated violations was added to the House version of § 17(a) of the Act, 29 U.S.C. § 666(a), after several earlier drafts had included enhanced penalties only for willful violations. *Compare* H.R. 16785, 91st Cong., 2d Sess. 67–68 (1970), *reprinted in* Legislative History at 959–60 *with* Legislative History at 1103. We believe the most reasonable inference to be drawn from the subsequent addition of "repeatedly" is that Congress intended to provide for enhanced penalties when an employer committed recurrent violations that did not necessarily rise to the level of willfulness. *See* 5 OSHC at 1326.

*Conclusion.*

Based on the foregoing analysis, we conclude that an interpretation of § 17(a) which recognizes a meaningful distinction

---

10. "Willfully" and "repeatedly" are joined in the statute by a disjunctive "or." This evidences a congressional intent to identify two distinct categories of violations. Normally, use of a disjunctive indicates alternatives and requires they be treated separately unless such a construction renders the provision repugnant to the Act. *See Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975); *Quindlen v. Prudential Insurance Co. of America*, 482 F.2d 876, 878 (5th Cir. 1973); *In re Rice*, 83 U.S.App.D.C. 26, 28, 165 F.2d 617, 619 n. 3 (1947).

11. This conclusion is reinforced by the legislative history of the Act. The bill originally reported out of the House Committee on Education and Labor contained enhanced penalties for both willful violations and failure-to-abate violations. *See* H.R.Rep. No. 91–1291, 91st Cong., 2d Sess. 8–9 (1970), *reprinted in* Legislative History at 838–39. The section of the Committee report which analyzed the penalty provisions stated that for "[o]ther than willful violations, the violator's intent should *not* be a pertinent factor in the original assessment of penalties. . . ." *Id.* at 26 (emphasis added), *reprinted in* Legislative History at 856.

between willful and repeated violations is appropriate. Such a construction more closely approximates the legislative intent underlying this provision, avoids the redundancy problem presented by the *Bethlehem Steel* decision, and is in accord with the traditional axiom that courts should not interpret statutes in a manner that renders terms of the statute superfluous. *See McDonald v. Thompson,* 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164 (1938); *Ex parte Public National Bank,* 278 U.S. 101, 104, 49 S.Ct. 43, 73 L.Ed. 202 (1928).

■ We have deliberately avoided setting forth an all-inclusive and rigid definition of "repeatedly" under the Act. We recognize the desirability of allowing the Commission flexibility in working out reasonable guidelines in enforcing the Act.[12] We decide only that fundamental rules of common sense and fairness, applied in light of the enforcement scheme contained in § 17, should control the meaning and enforcement of the Act.

■ Intrinsic within the statutory scheme of enforcement is the overall policy of providing employers with incentive to comply with the safety requirements of the Act. The system of penalties contained in § 17 allows for increased fines when the need arises to provide an employer with added incentive. To effectuate this policy,

before a repeated violation may be found it is essential that the employer receive actual notice of the prior violation.[13] For unless the employer has previously been made aware that his safety precautions are inadequate, there is no basis for concluding that a subsequent violation indicates the employer requires a greater than normal incentive to comply with the Act. Similarly, a reasonable time should elapse from the receipt of the notice of the original citation in order that employers be enabled to take corrective action.[14] The two criteria preclude a purely inadvertent recurrence of a violation from being the basis for a repeated violation citation and require a reasonable opportunity be provided to the employer to correct safety and health hazards.

■ After a review of the facts in the present case we are satisfied that the record is sufficient to sustain a finding of repeated violations under the Act and the applicable regulations. The repeated violation citations before us are based on prior and factually similar infractions which Hyman permitted to occur two or three times during less than a year and within a five-mile radius.

■ The only repeated violation that was not substantially identical to the previously cited infraction related to material stored within ten feet of an exterior wall

---

12. Although it is the court's responsibility to interpret the statute, nonetheless appropos is our observation in *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1263–64 (4th Cir. 1974):

> Because the policy arguments bearing on the choice . . . are particularly susceptible to sound resolution by those whose everyday responsibilities familiarize them with employer resistance or compliance with the Act, worker willingness to testify . . . and the significance in various industrial settings of the [potentially dispositive] distinction . . . ., we believe that decision should be left to the agency Congress entrusted to effectuate the goals of the statute. . . . The Commission's expertise and experience in adjudicating safety violations in a great number of cases specially equip it to decide this question. We decline to freeze interpretation, for further enforcement experience may well demonstrate the wisdom of distinctions and exceptions, if not outright change.

13. In most cases the final order procedure for the initial violation is presumptively sufficient notice to the company's management that an

initial violation has occurred. *See* § 10 of the Act, 29 U.S.C. § 659.

14. Chairman Barnako proposed that the same supervisor under whose responsibility the first violation occurred must also be in charge of the worksite at which a violation is cited as repeated. 5 OSHC at 1322. We agree with the Secretary that such a restriction is unwarranted under the Act. As the Secretary sets forth:

> That rule would not only ignore employers' affirmative duty to take effective steps to eliminate recurrent instances of specifically-cited violations, . . . but would permit construction and other "floating" site employers to evade full statutory responsibility for their workers' safety and health simply by failing to initiate adequate reporting and control procedures. It would also permit them effectively to shift compliance responsibilities to their individual supervisors and foremen. . . .

Brief for the Secretary of Labor at 33–34.

which was not higher than the material. This violated 29 C.F.R. § 1926.250(b)(1). The prior citation for violation of the same standard was issued because of material stacked next to a floor opening. The employer states this is not factually the same violation. We tend to agree. Hyman further urges that to allow a repeated violation citation when the previous infraction and the cited infraction are not factually the same conflicts with the prior notice requirement. Nevertheless, the Act specifically states that repeated violation citations are appropriate if an employer "repeatedly violates . . . any standard. . . ." 29 U.S.C. § 666(a).[15] It is settled that the agency has broad discretion in formulating sanctions to enforce the Act. We cannot interfere. The fine for this citation was $140.00. It is obvious the ALJ in assessing penalties took into consideration the various factors relating to assessment of penalties under the Act.[16]

The Commission's order is enforced.

---

**15.** Since the citations at issue in this case were based on prior infractions of the same standard, we need not decide whether a repeated violation citation can properly be based on the prior violation of a different standard. We do note, however, that there is some authority for the proposition that a repeated violation citation may be predicated upon the prior violation of any standard. *See Bethlehem Steel Corp. v. OSHRC,* 540 F.2d at 162.

**16.** 29 U.S.C. § 666(i) reads as follows:

The Commission shall have authority to assess all civil penalties provided in this section, giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations.