916 F.2d 294
 59 USLW 2338, 14 O.S.H. Cas.(BNA) 1889,
1990 O.S.H.D. (CCH) P 29,139
 UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC, Petitioner,
v.
ST. JOE RESOURCES, Amax Lead Co. and Occupational Safety and
Health Review Commission, Respondents.
Elizabeth DOLE, Secretary of Labor, U.S. Department of
Labor, Petitioner,
v.
AMAX LEAD COMPANY OF MISSOURI and Occupational Safety and
Health Review Commission, Respondents.
Elizabeth DOLE, Secretary of Labor, U.S. Department of
Labor, Petitioner,
v.
ST. JOE RESOURCES COMPANY, Occupational Safety and Health
Review Commission, Respondents.
 Nos. 89-4816, 89-4817 and 89-4818.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 6, 1990.
 
 Jeffrey A. Hennemuth, Allen H. Feldman, Steven J. Mandel, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., for petitioners.
 Mary-Win O'Brien, Asst. Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., for intervenor, United Steelworkers of America.
 Wm. A. Ziegler, Sullivan & Cromwell, New York City, W. Scott Railton, Reed Smith, Shaw & McClay; Ray H. Darling, Executive Secretary, Occupational Safety and Health Review Com'n, Washington, D.C., for respondents.
 Petitions for Review of an Order of the Occupational Safety and Health Review Commission.
 Before GEE, RUBIN and DAVIS, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 This case is before us again, this time from our remand to the Occupational Safety & Health Review Commission (Commission). In the earlier appeal we considered the benefits due employees who had been temporarily displaced from their regular jobs because of high lead levels in their blood. On remand the Commission held that employees who received paid lunch periods before removal are not entitled to paid lunch periods after removal if that pay increases their total compensation. In addition the Commission refused to order back pay for employees who had not received their full earnings after removal. We reverse on both issues and remand to the Commission for determination of the amounts of back pay owed to the medically removed employees.
 
 I.
 
 2
 In the earlier appeal we reviewed the facts in detail. See United Steel Workers of America v. Schuylkill Metals, 828 F.2d 314 (5th Cir.1987). We summarize them briefly here.
 
 
 3
 The Secretary of Labor (the Secretary) cited appellees Amax Lead Company (Amax) and St. Joe Resources Company (St. Joe) for violating the medical removal protection (MRP) provision of OSHA's lead standard. See 29 C.F.R. Sec. 1910.1025(k). The MRP provision protects workers who have high lead levels in their blood from continued exposure to lead in the workplace. Under the OSHA standard, an employer must remove such workers to a workplace of lower lead exposure. When an employer moves an employee, he triggers the MRP benefits provision, which requires the employer to "maintain the earnings, seniority and other employment rights and benefits of an employee as though the employee had not been removed" for up to eighteen months. 29 C.F.R. Sec. 1910.1025(k)(2)(ii).
 
 
 4
 An administrative law judge (ALJ) found that both Amax and St. Joe had violated the lead standard by failing to pay removed employees all earnings due them. The Commission, however, directed review and vacated both citations. The Commission concluded that the MRP provision requires an employer to maintain only the employee's base rate of pay. We reviewed the Commission's decision in Schuylkill Metals, where we upheld the Secretary's interpretation that "earnings" in the lead regulation includes not only the employee's base rate of pay, but also premium payments. We concluded that premium payments include paid lunch periods, shift differentials (i.e., additional payments for scheduled evening and night work), overtime pay, and production bonuses. 828 F.2d at 320. We then remanded the case to the Commission for further proceedings.
 
 
 5
 On remand the Commission severed the two cases but then issued virtually identical opinions. See Secretary of Labor v. Amax Lead Co. of Missouri, 1989 OSAHRC LEXIS 46, 13 OSHC (BNA) 2169 (1989); Secretary of Labor v. St. Joe Resources Co., 1989 OSAHRC LEXIS 49, 13 OSHC (BNA) 2193 (1989). Two commissioners sat as a quorum. See 29 U.S.C. Sec. 661(f). They held that Amax did not violate the lead standard by refusing to give medically removed employees a paid lunch period, even though those employees had received paid lunch periods before removal. According to the commission employers must pay a medically removed employee for lunch periods only "when failing to do so would reduce the employee's total compensation." Amax, 1989 OSAHRC LEXIS
 
 
 6
 In addition the commissioners agreed that the employees were entitled to back pay. They disagreed, however, about the propriety of issuing a "back pay" order. Chairman Buckley thought that Congress had not authorized the Commission to make "individual compensatory awards." Amax, 1989 OSAHRC LEXIS 46, * 18; St. Joe, 1989 OSAHRC LEXIS 49, * 22. He concluded that "the failure to pay full 'earnings' would be abated by the commencement to pay them." Amax, 1989 OSAHRC LEXIS 46, * 18; St. Joe, 1989 OSAHRC LEXIS 49, * 21. He determined that awarding individual compensatory relief to workers affected by the employer's past failure to follow the standard was not necessary to abate the violation.
 
 
 7
 Commissioner Arey, on the other hand, thought that "payment of amounts improperly withheld is the abatement required when a violation of the MRP benefits provision of the standard is found." Amax, 1989 OSAHRC LEXIS 46, * 20; St. Joe, 1989 OSAHRC LEXIS 49, * 23-* 24. She further concluded that the commission had authority to order the employer to make such payments "and that such an order is generally appropriate to define the employer's abatement obligation and avoid a potential failure to abate proceeding." Amax, 1989 OSAHRC LEXIS 46, * 20; St. Joe, 1989 OSAHRC LEXIS 49, * 24.
 
 
 8
 When two commissioners sitting as a quorum divide on an issue resolved by an ALJ, they ordinarily affirm the ALJ's order. In this case, however, neither commissioner agreed with the ALJ's ruling. The ALJ had concluded that a " 'back pay' retroactive money payment is the proper method of abatement to correct the violation." St. Joe, 1989 OSAHRC LEXIS 49, * 28 n. 15 (quoting the ALJ's record). Chairman Buckley thought that the Commission lacked authority to issue a "back pay" order. And Commissioner Arey, despite finding authority for a "back pay" order, voted to vacate the ALJ's order on the ground that the Commission should order back pay not only for scheduled overtime and shift differentials, but also for voluntary overtime. Because both commissioners disagreed with the ALJ's order, they agreed to vacate that order and refused to order Amax and St. Joe to reimburse medically removed employees for back overtime pay and shift differentials.
 
 
 9
 On appeal, the Secretary contends that the Commission erred in: (1) concluding that Amax did not violate the MRP benefits requirement by refusing to maintain paid lunch periods for its medically removed employees, and (2) in refusing to require Amax and St. Joe to pay the employees back compensation to abate the violation of improperly withholding MRP benefits. We consider each issue in turn.
 
 II.
 A.
 
 10
 Six Amax employees lost paid lunch breaks after removal from areas of high lead exposure. Before the transfer, the employees worked 7 1/2 hours, took a half-hour for lunch, and received eight hours pay. After the transfer, the employees continued to receive eight hours pay, but their shift increased to 8 1/2 hours, including a half-hour unpaid lunch break.
 
 
 11
 In Schuylkill Metals we approved the Secretary's argument that paid lunch breaks are "benefits" protected by the MRP provisions of OHSA's lead standard. Nevertheless, the Commission denied recovery to the Amax employees for the additional half-hour of wages per day. The Commission reasoned that the employees "suffer[ed] no economic loss" because they "received 8 hours pay per day before removal, and 8 hours pay per day after removal at the same hourly rate." Amax, 1989 OSAHRC LEXIS 46,
 
 
 12
 We reject the Commission's conclusion. After removal the employees worked an extra half-hour but received the same amount of wages as before removal. Their pay per hour of work, therefore, was reduced. This is an economic loss. For the second time, we announce our conclusion that the paid lunch breaks are an MRP benefit under the lead standard.
 
 B.
 
 13
 Both commissioners agreed that medically removed employees are entitled to back pay when they fail to receive the full "earnings" required by the MRP provision of the lead standard. But the Commission did not order back pay because Chairman Buckley thought that the Commission lacked authority to issue such an order.
 
 
 14
 The Commission takes official action only on the affirmative vote of at least two commissioners. See 29 U.S.C. Sec. 661(f). This Circuit has held that cases decided by a one-to-one vote do not comply with the statute and cannot stand. See Shaw Constr., Inc. v. OSHRC, 534 F.2d 1183, 1185-86 (5th Cir.1976).[1] In this case, the commissioners divided in their interpretation of the Commission's authority to issue a back pay order. Nevertheless, they both voted to vacate the ALJ's order. Chairman Buckley thought that the Commission lacked authority to issue such an order and Commissioner Arey thought that the ALJ's order should have included back pay for voluntary overtime, not just for scheduled overtime. St. Joe, 1989 OSAHRC LEXIS 49, * 28 n. 15. These two votes to vacate the ALJ's back-pay order satisfy the statutory requirement for official action by the Commission. This Court, therefore, may review the Commission's refusal to order back pay.
 
 
 15
 As noted the crux of this dispute is the Commission's authority to order back pay. Chairman Buckley found no express statutory authorization to order back pay and concluded that Congress had not granted such authority to the Commission. Chairman Buckley relied on 29 U.S.C. Sec. 660(c), which expressly requires an employer to reinstate with back pay any employee who has been discriminatorily discharged for reporting a health or safety violation. According to Chairman Buckley and the appellees, this section demonstrates that Congress explicitly provides for back pay when it intends to grant such relief. Chairman Buckley also points to other employment discrimination statutes that expressly authorize back pay awards. See National Labor Relations Act, 29 U.S.C. Sec. 160(c); Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5(g); Fair Labor Standards Act, 29 U.S.C. Secs. 216, 217. Because Congress did not expressly authorize recovery of back pay in the provision involved here, 29 U.S.C. Sec. 659(c), Chairman Buckley and the appellees argue that Congress did not intend appellees' medically removed employees to get this relief.
 
 
 16
 Appellees' argument hinges on the maxim of statutory construction "expressio unius est exclusio alterius" (the expression of one is the exclusion of others). Although this maxim sometimes provides insight into congressional intent, it "cannot properly be applied to a situation where the remedies redress different misconduct and where the remedial purposes of the Acts would be undermined by a presumption of exclusivity." Herman & MacLean v. Huddleston, 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 690 n. 23, 74 L.Ed.2d 548 (1983). That is the situation here.
 
 
 17
 All of the statutes cited by appellees, including the OSHA provision in 29 U.S.C. Sec. 660(c), address employment discrimination. Federal employment discrimination laws clearly "redress different misconduct" than general health and safety provisions. And "the remedial purposes of [OSHA] would be undermined by a presumption of exclusivity." We noted in Schuylkill Metals that "[a] central goal of the lead standard's MRP benefits was to secure worker-cooperation with the medical surveillance component of the rule." 828 F.2d at 320. If employers can ignore the payment of MRP benefits until the Secretary uncovers the violation, employees will realize that these provisions offer only shadow protection.
 
 
 18
 The Secretary argues that her power to "fix a reasonable time for the abatement of the violation," 29 U.S.C. Sec. 658(a),[2] combined with the Commission's power to affirm the Secretary's citation in Sec. 659(c)[3] empowers the Commission to order back pay. A recent decision of the Third Circuit supports the Secretary's argument. In Dole v. East Penn Mfg. Co., 894 F.2d 640 (3rd Cir.1990), the Secretary directed an employer to pay overtime as part of the MRP benefits. The Commission vacated the Secretary's citation because the employer had relied on a prior Commission decision holding that medically removed employees are not entitled to overtime pay. The Third Circuit concluded: "We will reinstate the citation and affirm it. Since the amount of overtime benefits in issue is undisputed, we also will order East Penn to abate the violation by paying the overtime benefits it owes its employee plus interest." Id. at 647.
 
 
 19
 Appellees contend that the Secretary's authority is limited to ordering an employer to stop current violations of OSHA and to imposing fines for the violation. The Secretary correctly observes, however, that the small monetary penalties she can impose against employers are woefully inadequate to require employers to pay MRP benefits if the employers know that they need not pay the benefits until federal inspectors discover the violation. The Secretary contends that Congress could not have intended to leave her powerless to carry out the goals of the Act.
 
 
 20
 We conclude that the Secretary's interpretation of her abatement authority is a reasonable reading of OSHA. And we defer to the Secretary when her interpretation is reasonable. Schuylkill Metals, 828 F.2d at 319. Appellees urge us to disregard our precedent[4] and defer to the Commission's interpretation of its own authority. A number of other circuits defer to the Commission when the Secretary and the Commission are at odds,[5] and the Supreme Court will soon resolve the conflict among the circuits.[6] But the appellees' argument is irrelevant because the Secretary and the Commission are not at odds.
 
 
 21
 In this case two commissioners divided on the question of authority to order back pay. The Commission, therefore, did not adopt a position on this issue. Indeed the only precedent we have for the Commission's position indicates that the Commission does have authority to order back pay. See RSR Corp. v. Brock, 764 F.2d 355 (5th Cir.1985) (affirming Commission orders remanding certain cases for a determination of the amount of MRP benefits due the employees). Even if we deferred to the Commission's position, therefore, we would reach the same result in this case.
 
 
 22
 For all of the foregoing reasons, we REVERSE the order of the Commission and REMAND for determination of the amounts of back pay owed to the employees identified in the Secretary's citations.
 
 GEE, Circuit Judge, dissenting:
 
 23
 Although the question is close, I am persuaded that there is no "order of the Commission" for us to review on the back pay issue. I therefore cannot join in the majority's quite reasonable disposition of this appeal.
 
 
 24
 Both commissioners agreed that medically removed employees are entitled to back pay for periods when they fail to receive the full "earnings" required by the MRP provision of the lead standard. The commissioners even agreed on the amount of earnings due the employees: "employees removed under the medical removal protection standard are entitled to ... contractual [and] voluntary overtime pay, paid lunch time [as long as it does not increase the employee's compensation, and] other pay differentials." St. Joe, 1989 OSAHRC LEXIS 49, * 23. But the Commission did not order back pay because Chairman Buckley concluded that the Commission lacked authority to issue such an order.
 
 
 25
 An employer who contests a citation issued by the Secretary presents his case to an ALJ. The ALJ's report becomes the final order of the Commission after thirty days, unless a commissioner directs review of the report. Once a commissioner does so, 29 U.S.C. Sec. 661(f) "sets the requirements for taking official action on the matter." Shaw Constr., Inc. v. Occupational Safety & Health Review Comm., 534 F.2d 1183, 1185-86 n. 5 (5th Cir.1976). That section provides: "For the purpose of carrying its functions under this chapter, two members of the Commission shall constitute a quorum and official action can be taken only on the affirmative vote of at least two members."
 
 
 26
 In this case, the two Commissioners, sitting as a quorum, agreed on every issue except on the Commission's authority to order back pay. In this Circuit, where the Commission's decision to affirm the ALJ is supported by only one vote, such a decision "does not comply with [Sec. 661(f) ] and cannot stand." See Shaw Constr., 534 F.2d at 1185-86.[1] It seems to follow, then, that an order to vacate or reverse the ALJ that is supported by only one vote cannot stand either.
 
 
 27
 The Commission characterizes its order as a Commission order because "neither member would adopt the back pay order issued by the judge." Chairman Buckley thought that the Commission lacked authority to issue such an order and Commissioner Arey thought that the ALJ's order should have included back pay for voluntary overtime, not merely for scheduled overtime. Thus, both commissioners voted against affirming the ALJ's back pay order; but they could not agree on whether they should issue their own. The Commission acknowledges that it is "divided on the propriety of a 'back pay' order, and therefore cannot issue such an order."
 
 
 28
 I am persuaded that the Commission does not issue a definitive, appealable order by issuing a list of things it will not do. The Commission has not decided by at least two votes whether an award of back pay in this case is appropriate. Because this non-decision is on back pay, I believe that it does not qualify as an order of the Commission. As it is not properly before us, I would remand this issue to the Commission for definitive disposition. See Shaw Constr., 534 F.2d at 1186.
 
 
 
 [1]
 The Circuits are split whether decisions of a divided Commission should be reviewed. See Marshall v. Sun Petroleum Products Co., 622 F.2d 1176 (3rd Cir.), cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980) and George Hyman Constr. Co. v. OSHRC, 582 F.2d 834 (4th Cir.1978), allowing review of divided decisions. See Willamette Iron & Steel Co. v. Secretary of Labor, 604 F.2d 1177 (9th Cir.1979), cert. denied, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 776 (1980); Cox Bros., Inc. v. Secretary of Labor, 574 F.2d 465 (9th Cir.1978), finding no jurisdiction over divided decisions
 
 
 [2]
 Section 658 empowers the Secretary to issue citations against employers who violate safety and health standards. The provision then describes the contents of the citation:
 Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation.
 
 
 [3]
 Section 659(c) requires the Commission to hold hearing on contested citations. After a hearing, the Commission must "issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief, and such order shall become final thirty days after its issuance."
 
 
 [4]
 See Brock v. Schwarz-Jordan, Inc., 777 F.2d 195, 196-97 (5th Cir.1985) (per curiam); Marshall v. Southwestern Indus. Contractors & Riggers, Inc., 576 F.2d 42, 44 (5th Cir.1978); Brennan v. Southern Contractors Service, 492 F.2d 498, 501 (5th Cir.1974)
 
 
 [5]
 See Dole v. OSHRC, 891 F.2d 1495, 1498 (10th Cir.1989), cert. granted, --- U.S. ----, 110 S.Ct. 3235, 111 L.Ed.2d 747 (1990); Brock v. Bechtel Power Corp., 803 F.2d 999, 1000-01 (9th Cir.1986); Usery v. Hermitage Concrete Pipe Co., 584 F.2d 127, 132 (6th Cir.1978); Marshall v. Western Electric, Inc., 565 F.2d 240, 244 (2d Cir.1977); Brennan v. OSHRC, 513 F.2d 713, 715 (8th Cir.1975); and Brennan v. Gilles & Cotting, Inc., 504 F.2d 1255, 1261-62 (4th Cir.1974)
 
 
 [6]
 On June 25, 1990, the Supreme Court granted certiorari in Dole v. OSHRC, --- U.S. ----, 110 S.Ct. 3235, 111 L.Ed.2d 747 (1990)
 
 
 [1]
 The Circuits are split whether decisions of a divided Commission should be reviewed. See Marshall v. Sun Petroleum Products Co., 622 F.2d 1176 (3rd Cir.), cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980) and George Hyman Constr. Co. v. Occupational Safety & Health Review Comm., 582 F.2d 834 (4th Cir.1978), allowing review of divided decisions. See Willamette Iron & Steel Co. v. Secretary of Labor, 604 F.2d 1177 (9th Cir.1979), cert. denied, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 776 (1980); Cox Bros., Inc. v. Secretary of Labor, 574 F.2d 465 (9th Cir.1978), finding no jurisdiction over divided decisions